**SAFECARD SERVICES, INC.,**
**Appellant,**

v.

**SECURITIES AND EXCHANGE**
**COMMISSION.**

No. 89–5374.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 17, 1990.

Decided March 1, 1991.

Robert R. Belair, with whom Cherif Sedky and Marian G. Dent were on the brief, Washington, D.C., for appellant.

Kathleen Cody, Atty., S.E.C., with whom Richard M. Humes, Asst. Gen. Counsel, and Paul Gonson, Sol., S.E.C., were on the brief, Washington, D.C., for appellee. Daniel L. Goelzer, Atty., S.E.C., Washington, D.C., also entered an appearance, for appellee.

Before WILLIAMS, D.H. GINSBURG and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Appellant SafeCard Services, Inc. sued the Securities and Exchange Commission, under the Freedom of Information Act, 5 U.S.C. § 552, to obtain certain documents relating to that agency's investigation into the manipulation of SafeCard stock. The district court granted the SEC summary judgment with respect to 44 documents for which it claimed the attorney work product or deliberative process privileges of Exemption 5, or invoked the personal privacy provision of Exemption 7(C). 5 U.S.C. § 552(b)(5) & (7)(C). The district court denied SafeCard's motion for discovery into the circumstances surrounding the destruction of 127 other documents and the loss of seven files covered by the company's FOIA

request. We affirm the district court rulings regarding discovery and the work product and privacy exemptions. We remand for further proceedings with respect to the documents withheld pursuant to the deliberative process privilege.

## I. BACKGROUND

In the early 1980s, the SEC initiated a series of investigations into potentially illegal trading in SafeCard's stock. After the SEC had closed most of those investigations, SafeCard requested all documents relating to 33 individuals and organizations that the agency had suspected of manipulating SafeCard's stock. After several years of negotiation, SafeCard sued the SEC; thereafter the parties reached a framework agreement, pursuant to which the SEC released approximately 75,000 pages of material. The parties remain in dispute, however, over three groups of documents.

The first group is composed of 127 documents that were among those mistakenly destroyed when the SEC's contract cleaning service discarded the box in which Denise Dishman, an SEC paralegal, was keeping them. Sixteen of these documents were the subject of a motion for summary judgment pending at the time they were destroyed; hence we shall call them the "MSJ documents." The parties have denominated the other 111 the "non-responsive documents," although they, too, were the subject of a later motion for summary judgment.

The second group of documents in dispute comprises the contents of seven files that the SEC located but, according to the agency's records, sent to the Federal Records Center during a two year hiatus in this litigation. The FRC has not been able to retrieve these files.

The third group is the 44 documents for which the SEC claims an exemption from the FOIA. It asserts that six documents are exempt under the privilege for attorney work product, which is incorporated into Exemption 5; that seven documents (including one of the foregoing six) are exempt under the deliberative process privi-

lege, also incorporated into Exemption 5; and that 32 other documents contain names and addresses that come within Exemption 7(C) because their release would constitute an unwarranted invasion of personal privacy.

## II. DISCOVERY

▮▮▮ SafeCard moved for discovery in order to inquire into the circumstances surrounding the SEC's loss of documents and the adequacy of its efforts either to locate or to recreate the lost documents. The district court held that the SEC's affidavits were sufficient to justify summary judgment on the adequacy of its efforts, and therefore denied discovery. This court will overturn the district court's exercise of its broad discretion to manage the scope of discovery only in unusual circumstances. *Brune v. IRS,* 861 F.2d 1284, 1288 (D.C.Cir. 1988).

▮▮▮▮ In order to establish the adequacy of a search, agency affidavits must be, as the district court correctly noted, "relatively detailed and non-conclusory, and . . . submitted in good faith." *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C. Cir.1981) (citations and quotation marks omitted). Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." *Id.*

SafeCard no longer denies that Ms. Dishman's affidavit concerning efforts to locate copies of the 111 non-responsive documents is sufficiently detailed and non-conclusory to support the district court's judgment. Instead, it argues that Ms. Dishman's other affidavits, regarding the circumstances in which all 127 documents were destroyed, the SEC's search for and efforts to reconstruct the 16 MSJ documents, and its search for the seven lost files, were lacking in detail and conclusory. SafeCard also points to various inconsistencies in the SEC affidavits, which it claims raise enough uncertainty about the adequacy of the agency's search, or about its good faith, to warrant discovery. None of SafeCard's ar-

guments is sufficiently weighty to justify the substitution of our judgment for that of the district court.

■ First, the SEC adequately investigated and described the circumstances surrounding the destruction of the 127 documents. Ms. Dishman interviewed the relevant employees of the cleaning company and recounted what she learned from those interviews. This, coupled with her unavailing room-to-room search for the box of missing documents, provides adequate assurance that the documents were in fact destroyed.

SafeCard objects to the second-hand nature of this affidavit, insofar as it describes what the cleaning crew told the affiant. The point is not well taken in circumstances such as these, however. Ms. Dishman was in charge of coordinating the SEC's search and recovery efforts, and therefore she is the most appropriate person to provide a comprehensive affidavit. *See, e.g., Meeropol v. Meese,* 790 F.2d 942, 951 (D.C.Cir.1986) (approving reliance upon affidavit of agency employee responsible for supervising search, although he necessarily relied upon information provided by staff members who actually performed search). In the case cited by SafeCard, *Weisberg v. Department of Justice,* 627 F.2d 365 (D.C.Cir.1980), an FBI agent stated only that "he believed the [spectrographic] plate [relating to the assassination of President Kennedy] was discarded in one of the periodic housecleanings by the laboratory." *Id.* at 369. His belief was not said to be based upon his or anyone else's actual knowledge that the plate was discarded. In this case, the very person who removed the box confirmed that fact for Ms. Dishman, and the supervisor of the cleaning crew explained to her that the trash would have been compacted and sent to a landfill. Therefore, Ms. Dishman's affidavit, although partly second-hand, is not at all speculative, as was the affidavit in *Weisberg.*

■ Second, Ms. Dishman's affidavits concerning the search for the 16 MSJ documents, while not as detailed as the affidavit concerning the 111 non-responsive doc-

uments, are sufficient to support summary judgment. As recounted in these affidavits, Ms. Dishman determined that 12 of the 16 documents were originals of a type that the SEC does not ordinarily copy or keep; for this reason, she made no further effort to locate any (presumably nonexistent) copies. SafeCard objects that her search was therefore inadequate, but we disagree. When a plaintiff questions the adequacy of the search an agency made in order to satisfy its FOIA request, the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant. *Meeropol,* 790 F.2d at 950–51; *Weisberg v. Department of Justice,* 705 F.2d 1344, 1357 (D.C.Cir.1983). Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them. *Weisberg v. Department of Justice,* 745 F.2d 1476, 1486–87 (D.C.Cir.1984); *Ground Saucer Watch,* 692 F.2d at 771. The SEC's failure to make hopeless and wasteful efforts to locate copies that would never have been created in the normal course is not a ground for reversal of the district court.

■ Nor is the SEC required to recreate or to reacquire a document that it no longer has. *Yeager v. Drug Enforcement Admin.,* 678 F.2d 315, 321 (D.C.Cir.1982). The FOIA provides a claimant with a remedy only against an agency that has "improperly withheld" a record. 5 U.S.C. § 552(a)(4)(B); *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.,* 445 U.S. 375, 384, 100 S.Ct. 1194, 1200, 63 L.Ed.2d 467 (1980). If the agency is no longer in possession of the document, for a reason that is not itself suspect, then the agency is not improperly withholding that document and the court will not order the agency to take further action in order to produce it.

■ Third, SafeCard's objection to the absence of detail in Ms. Dishman's affidavits describing the search for the seven lost files is misdirected. Ms. Dishman repeatedly, over the course of several months, asked the FRC to search for the

files that SafeCard had requested but that SEC records listed as being in the FRC's custody. The FRC recovered several of those files. Eventually, however, a Mr. Miller at the FRC told Ms. Dishman that a thorough three-month search had failed to turn up seven of the requested files.

Having taken all of the steps within its power to retrieve the files from the FRC, the SEC fulfilled its burden of conducting a search reasonably calculated to discover the documents requested. Insofar as Safe-Card's objection goes to the adequacy of the FRC's effort, it is out of bounds; discovery will not lie against the SEC in order to inquire into the workings of the FRC, and SafeCard has made no effort to gain discovery directly from the FRC.

■■■ Finally, SafeCard's claim that there are "troubling inconsistencies" in the SEC affidavits and briefs refers us only to trivial matters, such as typographical errors and minor ambiguities undeserving of extended treatment here. Much is made, for example, of the appearance that the SEC created two inconsistent Vaughn indices, one for the district court and one for the Appellant, although the SEC adequately explained the matter as a simple confusion between the final and the penultimate versions of the same index. This apparent mix-up and a small collection of other technical failings support neither the allegation that the SEC's search procedures were inadequate, nor an inference that it acted in bad faith.

### III. EXEMPTIONS

The district court upheld the SEC's claim that it could withhold 12 documents under FOIA Exemption 5 (attorney work product and deliberative process) and redact information from 32 others under Exemption 7(C) (personal privacy). We deal in turn with each ground of exemption.

#### A. *Attorney Work Product*

■■■ SafeCard does not deny that the six documents withheld as attorney work product contain the "mental impressions, conclusions, opinions or legal theories of an attorney." Fed.R.Civ.P. 26(b)(3). It ques-

tions only whether these documents were prepared "in anticipation of litigation." To meet that standard, we have held, "the documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 865 (D.C.Cir.1980).

A law enforcement agency may meet this standard by demonstrating that one of its lawyers prepared a document in the course of an investigation that was undertaken with litigation in mind. Such an investigation would have to be, and typically would be, based upon a suspicion of specific wrongdoing and represent an attempt to garner evidence and to build a case against the suspected wrongdoer. The existence of an active investigation, therefore, is strong circumstantial evidence that the agency lawyer prepared the document with future "litigation in mind." *Cf. Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 586 (D.C.Cir.1987) ("absence of an ongoing investigation" one factor indicative that litigation not anticipated).

In this case, SEC lawyers prepared all the documents in question in the course of active investigations into potentially unlawful stock trades by specific individuals. According to the Vaughn index, the documents contain the lawyers' analyses of those trades, and of the testimony they took from numerous witnesses with regard to them.

SafeCard offers as its strongest counterexample document 31–1, which the Vaughn index describes as follows:

Colonial Commercial

HO–1187

\* \* \* \* \* \*

**Handwritten Staff Notes.** There are approximately fifty pages of notes memorializing staff legal research. These notes contain comments, summaries and analyses of facts, cases and documents as they relate to issues raised in a commission investigation. Release of these materi-

als would reveal the staff's analysis as to the legal theories it considered pursuing in this case. These materials constitute attorney work product.

SafeCard's objection is that "such a broad statement of privilege is inadequate" because, under our decision in *Coastal States*, "the agency must establish in its affidavits and indexes the fact that a specific claim had arisen [and] was disputed." 617 F.2d at 866. According to SafeCard, "The SEC should have been required to provide concrete facts to show that litigation was intended."

This objection focuses upon a single entry in the Vaughn index, divorced from the accompanying affidavits and the related index entries that put this particular document into context. The SEC created this document in the course of an investigation of particular subjects—individuals and companies that it believed may have violated the law. The entry for a related document itemizes the specific sections of the securities laws that the SEC believed they may have violated, and the entry for 31–1 itself makes clear that the agency had reached the stage in its investigation at which it was comparing the accumulated facts to the caselaw and evaluating the "legal theories it considered pursuing." Moreover, as the agency points out in its brief, "the staff had taken testimony from at least 15 witnesses, discussed granting immunity to another, and was preparing an advisory memorandum to the Commission on whether to file an injunctive action." According to an SEC affidavit, such an investigation concludes with a decision whether to file a complaint. If the agency cannot in these circumstances be said to have had litigation of a specific claim in mind, it is impossible to imagine when, prior to the actual filing of a complaint, it can be. *Cf. Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 127 (D.C.Cir.1987) (memoranda advising IRS of anticipated legal challenges to proposed program held attorney work product). While we do not hold that every document prepared during an investigation is necessarily prepared in anticipation of litigation, the evidence in this case is more than sufficient to meet this require-ment of the attorney work product privilege.

■ We are mindful of the fact that "the prospect of future litigation touches virtually any object of" a prosecutor's attention, *Senate of Puerto Rico*, 823 F.2d at 587, and that the work product exemption, read over-broadly, could preclude almost all disclosure from an agency with substantial responsibilities for law enforcement. We do not so read the exemption, however. We hold only that where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently "in mind" for that document to qualify as attorney work product.

### B. *Deliberative Process*

■ The seven documents for which the SEC claims the deliberative process exemption are the minutes of various meetings at which the Commissioners considered whether to file certain injunctive actions, and documents relating to the staff's evaluation of a preliminary prospectus that Safe-Card had filed. SafeCard does not challenge the deliberative nature of these documents, but it does question whether the documents are pre-decisional, or whether they were adopted by, or expressly incorporated into, final decisions of the agency. It is the agency's burden to establish the pre-decisional character of the documents. *Coastal States*, 617 F.2d at 868.

Our starting point for analysis of the deliberative process privilege is *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153–54, 95 S.Ct. 1504, 1517–18, 44 L.Ed.2d 29 (1975). In that case, the Supreme Court held that the decision of the General Counsel of the NLRB not to file an unfair labor practice complaint constituted final action in the adjudication of a case. That holding had two independent consequences: first it made the memorandum of the General Counsel explaining his decision, and any document adopted by, or expressly incorporated into, that memorandum, subject to the affirmative disclosure requirements of

5 U.S.C. § 552(a); and second, it removed the General Counsel's memorandum and any incorporated document from the scope of the deliberative process privilege.

Following *Sears*, we decided *Bristol–Myers Co. v. FTC*, 598 F.2d 18, 28 n. 20 (D.C.Cir.1978), which concerned the Federal Trade Commission's claim that the minutes of a Commission meeting were within the deliberative process exemption. We held that, in order to carry its burden, the agency must describe not only the contents of the document but also enough about its context, *viz.* the agency's decisionmaking process, to establish that it is a pre-decisional part thereof. 598 F.2d at 28 n. 20; *see also Senate of Puerto Rico*, 823 F.2d at 586; *King v. IRS*, 684 F.2d 517, 519 (7th Cir.1982). Specifically, the court needs to know whether the document explains, directly or by reference, the reason for the agency's decision. *Bristol–Myers*, 598 F.2d at 24–28.

The SEC objects that the incorporation principle of *Sears* and *Bristol–Myers* applies only to material incorporated into a "final opinion" in an "adjudication under Section 5 of the Administrative Procedure Act." The SEC's decision not to file an injunctive action against a particular entity would, like the General Counsel's memorandum in *Sears*, seem to constitute final agency action in the adjudication of a case. If so, then even if the principle of *Sears* and *Bristol–Myers* were as limited as the SEC suggests, the agency decisions at issue in this case would nonetheless fall within its bounds. We need not decide whether these documents are final opinions, however, because we do not understand the incorporation principle to be as limited as the SEC suggests.

The Supreme Court's reasoning in *Sears* was based in large part upon the non-pre-decisional character of the documents there withheld. The Court viewed a final opinion in the adjudication of a case as the paradigm of a document that is not pre-decisional. 421 U.S. at 152 n. 19, 95 S.Ct. at 1517 n. 19. In explaining why the rationale of the deliberative process privilege does not apply to an agency's explanation of its final

action, the Court noted that "[t]he probability that an agency employee will be inhibited from freely advising a decision maker for fear that his advice, *if adopted,* will become public is slight." *Sears*, 421 U.S. at 161, 95 S.Ct. at 1521 (emphasis in original). This point cuts to the heart of Exemption 5, regardless of whether the advice is incorporated into a "final opinion" in a Section 5 "adjudication," or into some other species of final decision. In *Sears,* the Court treated the possible incorporation of a document into a Section 5 final opinion as illustrative, not exhaustive, of the ways in which the pre-decisional status of a document may be terminated for purposes of the deliberative process privilege.

In this case, the SEC has provided very limited information about the nature of the deliberative process of which it says these documents are a part. The description of documents 10–1 and 10–2 in the Vaughn index illustrates the problem:

> At this 1/24/78 meeting, the Commission discussed whether to file an injunctive action against Marc Howard and Howard Associates. At the conclusion of this discussion, the Commission reached a decision on this question. These minutes reflect the Enforcement attorney's recommendations to the Commission that are protected from disclosure by the deliberative process privilege.

Without further information, it is impossible to know whether the agency's claim of exemption exceeds the limits established in *Sears* and *Bristol–Myers*. The SEC needs to explain such matters as how decisions like those in issue are reached; the role that staff discussion and memoranda play in such decisions; the manner in which such decisions are memorialized and explained; and whether such decisions are treated, in later agency decisionmaking, as precedents. *See, e.g., Renegotiation Bd. v. Grumman Aircraft Engineering Corp.,* 421 U.S. 168, 185–86, 189, 95 S.Ct. 1491, 1500–01, 1502, 44 L.Ed.2d 57 (1975) (agency explanation that it uses recommendations for purpose of discussion but never explicitly adopts or ratifies reasoning contained in those documents supports deliberative process exemption for those documents).

As with the work product claim, the necessary information can be provided by accompanying documents that give context to the Vaughn index entry. In this instance, however, the SEC's other submissions create, rather than allay, doubts about the applicability of the deliberative process exemption; consequently, the present record is insufficient to support summary judgment in favor of the agency. For example, an SEC affidavit reports that "[t]opics discussed and decisions rendered [at Commission meetings] are recorded and documented," and that "[t]his information is communicated to the staff." This statement raises the possibility that the staff uses the minutes of these meetings as informal precedents to guide their decisions in future cases.

Surely any portion of the minutes recounting a Commissioner's explanation of why he or she voted in a particular way could not be considered pre-decisional, any more than would that Commissioner's separate written opinion accompanying the agency's final order. Additionally, if, in explaining its collective decision, the Commission expressly adopts or incorporates any element of a Commissioner's or a staff member's prior oral or written discussion of the matter, those incorporated portions of earlier minutes or documents would no longer qualify as pre-decisional.

In this case SafeCard claims that the discussions contained in the Commission minutes may explain, or have been incorporated into, the final decisions to which they relate. Because the SEC has failed to disclose the substance of those final decisions, and has failed to explain the decisionmaking process in such a way as to make it clear that there is no need for such disclosure, it has not met its burden of demonstrating that the deliberative process exemption is applicable.

## C. *Exemption 7(C) Privacy*

 The SEC deleted the names and addresses of third parties mentioned in witness interviews, of customers listed in stock transaction records obtained from investment companies, and of persons in correspondence with the SEC. It claims that this information is covered by Exemption 7(C), which applies to information compiled for law enforcement purposes, the release of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In order to evaluate the propriety of these deletions, the court must balance the privacy interests involved against the public interest in disclosure. *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762, 109 S.Ct. 1468, 1475–76, 103 L.Ed.2d 774 (1989).

The privacy interest at stake is substantial. "There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." *Senate of Puerto Rico*, 823 F.2d at 588 (*accord* as to subjects of investigation, potential defendants, and witnesses). Recognizing this danger, Exemption 7(C) "affords broad[ ] privacy rights to suspects, witnesses, and investigators." *Bast v. Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981).

The public interest in disclosure is not just less substantial, it is insubstantial. SafeCard argues that "access to the names and addresses of potential witnesses or litigants in SEC stock manipulation investigations would provide SafeCard and the public with insight into the SEC's conduct with respect to SafeCard in particular and short selling practices in general." We have rejected similar claims in the past because the type of information sought is simply not very probative of an agency's behavior or performance. *See, e.g., Senate of Puerto Rico*, 823 F.2d at 588; *Bast*, 665 F.2d at 1254–55; *see also Reporters Committee*, 489 U.S. at 773–74, 109 S.Ct. at 1481–82 (discussing *Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), and noting that deletions of names from disciplinary hearing summaries "were unquestionably appropriate because the names of the particular cadets were irrelevant to the inquiry into the way the Air Force Academy administered its Honor Code"). Indeed, unless there is compelling evidence that the agency deny-

ing the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant.

In *Reporters Committee*, the Supreme Court held that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." 489 U.S. at 776, 109 S.Ct. at 1483. Courts are to generalize from their experience, that is, in order to minimize unnecessary inquiries into factual minutiae, much as they do in applying the *per se* rule in antitrust to categories of conduct so likely to warrant liability as to make a particularized inquiry a poor use of resources.

■ Prior to *Reporters Committee* this court had many a time resolved particularized inquiries in favor of withholding the names and addresses of private individuals appearing in law enforcement files. *See, e.g., Keys v. Department of Justice*, 830 F.2d 337, 346–48 (D.C.Cir.1987); *King v. Department of Justice*, 830 F.2d 210, 233–34 (D.C.Cir.1987); *Senate of Puerto Rico*, 823 F.2d at 588; *Bast*, 665 F.2d at 1254–55; *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 861–66 (D.C.Cir.1981); *Baez v. Department of Justice*, 647 F.2d 1328, 1338–39 (D.C.Cir.1980); *Lesar v. Department of Justice*, 636 F.2d 472, 488 (D.C.Cir. 1980). We now hold categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure. No such evidence of agency misconduct appearing in this case, the agency need not disclose the names and addresses redacted from the documents at issue here.

### Conclusion

The decision of the district court denying discovery was reasonable and well within its broad discretion to manage such matters. We agree with the district court that the SEC was entitled to summary judgment with regard to the exemptions it claims under the work product privilege of Exemption 5 and under the personal privacy provision of Exemption 7(C).

We find the record inadequate to support the SEC's deliberative process claim under Exemption 5, however. Accordingly, we remand the matter for the district court to inquire whether any of the deliberative material at issue was adopted as, or incorporated by reference into, a final agency decision, which would preclude its exemption. If the district court determines that the SEC incorporated document 29–3 into a final decision, then the agency must release it even though it would otherwise be covered, as we have held, by the attorney work product privilege. *See Bristol–Myers*, 598 F.2d at 24 n. 11.

*So ordered.*