Cara Leslie ALEXANDER,
et al., Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.

No. Civ. 96–2123(RCL).

United States District Court,
District of Columbia.

April 13, 1998.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

James Jordan Gilligan, Elizabeth Jane Shapiro, Julia Fayngold, U.S. Department of Justice, Washington, DC, for defendant FBI and Executive Office of the President.

David Evan Kendall, Nicole Kay Seligman, Paul Benedict Gaffney, Williams & Connolly, Washington, DC, for defendant Hillary Rodham Clinton.

James Franklin Fitzpatrick, Michael R. Geske, Arnold & Porter, Washington, DC, Peter Z. Zimroth, Arnold & Porter, New York City, for defendant Bernard W. Nussbaum.

Randall James Turk, David S. Cohen, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for defendant Craig Livingstone.

Robert Weinberg, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Robert Muze, Stein, Mitchell & Mezines, Washington, DC, for defendant Anthony Marceca.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Motion by Executive Office of the President for a Protective Order Quashing Plaintiffs' Notice of Deposition and Request for Documents Pursuant to Rule 30(b)(6) & (b)(5). Upon consideration of the submissions of the parties, oral argument, and the relevant law, EOP's motion is denied in part and granted in part.

### I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." According to their complaint, plaintiffs allege that the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations. Plaintiffs contend that the requests for the files came from Bernard Nussbaum, Craig Livingstone, and Anthony Marceca, who were allegedly acting outside the scope of their employment and at the request of defendant Hillary Rodham Clinton. Plaintiffs allege that these actions were taken for partisan political purposes in order to obtain potentially embarrassing and damaging information on former Reagan and Bush administration personnel.

On January 12, 1998, plaintiffs served on the EOP a Notice of Deposition and Request for Production of Documents ("Notice") pursuant to Rule 30(b)(6) and (b)(5) of the Federal Rules of Civil Procedure. The Notice

provides that EOP shall designate "one or more" representatives to testify on a number of topics divided into nine categories by plaintiffs: (1) the system of files maintained to store, protect, and preserve documents including audio and videotape recordings, computer files, and electronic mail sent, received, forwarded, transmitted, etc. in or from the EOP, offices of White House Counsel, or the office of the First Lady; (2) the systems used since January 1, 1992 to create, store, retrieve, and delete electronic mail; (3) the system of recording devices used to record sounds or pictures in any of the office, common, residential, and/or other areas of the White House and the Entirety of the Executive Office of the President; (4) the White House Office Database ("WHODB"); (5) the system for controlling access to the White House by any official, employee, detailee, resident, volunteer, intern, visitor, or overnight guest; (6) all measures for compliance at EOP with the requirements of the National Archives Act of 1934, the National Archives and Records Administration Act of 1984, the Presidential Libraries Act, the Presidential Libraries Act of 1986, the Presidential Recordings and Materials Preservation Act, the Presidential Records Act of 1978, and any other statute or regulation relating to the disposal of documents; (7) systems for recording the acquisition, location, and/or disposition of personal electronic computers used by any official, employee, detailee, resident, volunteer, intern, visitor, or overnight guest in the EOP; (8) any recording, transcription, communication, printing, filming, and any and all recordation devices used by Hillary Rodham Clinton and others in the White House in the governmental, official, or private capacities; and (9) any other matters relevant to this case, or which may lead to the discovery of relevant evidence.

Pursuant to Rule 30(b)(5), plaintiffs have also attached to the Notice a Schedule of Documents that EOP is instructed to produce at the time of the deposition. Plaintiffs seek all documents referring in any way to the subject matter of any of the requested deposition testimony; all documents relating to "recordation systems" throughout all of EOP, including the technical requirements of such systems; documents reflecting how defendants searched for documents in response to plaintiffs' first request for documents dated October 9, 1997; and all records relating to the FBI files matter.

The EOP objects to the Rule 30(b)(6) and (b)(5) Notice on several grounds. The EOP contends that plaintiffs' Notice is primarily designed to obtain information regarding the scope of EOP's search for documents responsive to previous discovery demands and the location of additional material which plaintiffs hope exists. The EOP asserts that discovery into the prior scope of EOP's search for documents is not warranted because plaintiffs have not demonstrated any deficiencies in any prior searches. The remaining specific discovery requests for testimony are objected to on the grounds that they are overbroad, burdensome, and not reasonably calculated to lead to admissible evidence. The EOP requests that this court issue a protective order quashing plaintiffs' Rule 30(b)(6) Notice in its entirety.

## II. *Analysis*

As stated, the EOP objects to the Notice filed by plaintiffs pursuant to Rule 30(b)(6) and (b)(5) on several grounds. The EOP divides its objections in the following manner. First, the EOP objects to discovery to the extent that it seeks deposition testimony and documents regarding the scope of EOP's prior search for responsive documents not including electronic mail ("e-mail") and deleted computer hard drives. A separate objection is made with respect to plaintiffs' attempts at discovery pertaining to the scope of prior searches conducted by the EOP of deleted computer files and e-mail. Finally, the EOP makes specific objections to each of the document and deposition requests contained in the Notice. Accordingly, each of the objections set forth by the EOP will be considered separately.

### A. *The Scope of Prior EOP Searches*

The EOP objects to plaintiffs' Notice to the extent that it seeks deposition testimony and documents regarding the scope of EOP's prior search for responsive

documents not including deleted computer files and e-mail. The EOP asserts that "[b]ecause EOP's search for responsive information was reasonable . . . no further discovery into the scope of EOP's search or how EOP retains and stores information should be permitted." Mot. for Protective Order at 5. Moreover, the EOP contends that "[d]iscovery into the scope of a document search should not be permitted absent a showing that there is some specific deficiency in the document production." *Id.* The EOP suggests that Freedom of Information Act ("FOIA") cases provide an analogous standard by which to determine whether discovery into the scope of a document search should be permitted.[1] In essence, the EOP believes that because it conducted a reasonable search in response to prior document requests and plaintiffs have made no showing to the contrary, plaintiffs should be precluded from pursuing additional discovery into the scope of the prior search conducted by EOP.

Plaintiffs point to the "Clinton Administration's history of stonewalling the production of documents in both this and other matters . . . and its repeated failure to produce responsive documents in *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, Civ. No. 95–133(RCL), as well as its history of being less than candid," as justifying their concerns about full production in this case. Pls.' Opp. to EOP's Mot. for Protective Order (Pls.' Opp.) at 3. Plaintiffs also allege that a review of the documents previously produced by defendants demonstrates that substantial documentation has not been produced. *Id.* Plaintiffs support these allegations with references to the depositions of Paul Begala, James Carville, and George Stephanopoulis and assert that remarks made by Stephanopoulis regarding the employment of an "Ellen Rometsch strategy" and subsequent conversations between these deponents regarding such a strategy make it likely that "there should be e-mail, notes, correspondence, and other documents" about such a strategy. *Id.*

The EOP is correct in its contention that discovery into the scope of the prior searches conducted in response to plaintiffs' discovery requests is unwarranted in this case. In support of the motion for protective order, the EOP provided this court with the Declaration of Sally Paxton, Special Associate Counsel to the President with the Office of White House Counsel. In her declaration, Paxton detailed the search undertaken by EOP in response to plaintiffs' First Request for Production of Documents in this case. Paxton stated that she directed that copies of the documents that were produced in response to requests and subpoenas from the various entities investigating the FBI files matter be turned over to the Department of Justice attorneys representing the EOP in the instant case for subsequent disclosure to plaintiffs pursuant to their request. EOP's Mot. for Protective Ord. Ex. B at 3.

In addition to production of these materials, Paxton supervised a follow-up search in order to ensure that the EOP's response to plaintiffs' request for documents was as thorough as was reasonably possible. *Id.* Paxton stated that she wrote a directive requiring each employee within EOP to search his or her files and records for responsive documents. In response to this directive, Paxton received a certification signed by the head of each office within EOP confirming that each employee had complied with the directive. Moreover, Paxton stated that she contacted former White House employees or their attorneys as identified in plaintiffs' request for documents to ascertain whether these individuals had any White House documents in their possession. Paxton further indicated that computer searches were also conducted and all responsive documents were made available to the Department of Justice attorneys representing EOP in this case for disclosure to plaintiffs.

This declaration stands unchallenged by plaintiffs as they have set forth no information suggesting that the search supervised by Paxton was conducted in an improper or

---

1. A plaintiff pursuing discovery into the adequacy of the scope of the search an agency made in response to a FOIA request must show that the search was not reasonably calculated to discover

the requested documents. *See SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C.Cir.1991). *See also Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 10 (D.D.C.1995).

deficient manner. Plaintiffs suggestion that the Clinton Administration's "history of stonewalling" and its conduct in both this and other cases as demonstrating the need to explore the scope of the prior searches may have carried more weight if they had come forward with any evidence to refute Paxton's declaration. Plaintiffs weakly contend that the depositions of Begala, Carville, and Stephanopoulis demonstrate that the production of documents has been inadequate. After reviewing these depositions in their entirety, the court simply cannot reach the same conclusion. Accordingly, it is the court's conclusion that plaintiffs are not entitled to pursue discovery pertaining to the scope of prior searches conducted by the EOP.[2]

### B. *Search of E–Mail and Deleted Computer Hard Drives*

■ The EOP also objects to plaintiffs' requests for discovery to the extent that it requires the EOP to search through its system of electronic mail ("e-mail") and deleted computer hard drives. According to the EOP, the declaration submitted by Paxton demonstrates that as part of its search in response to plaintiffs' previous Rule 34 requests, the EOP searched computers to the extent that such searches were feasible and reasonably expected to lead to the discovery of responsive documents. The EOP claims that "[w]holesale restoration and searches of years-old backed-up and archived e-mail, deleted and archived computer files, or shared drive files is not part of a reasonable search . . . as such an exercise is burdensome, costly, and unlikely to lead to responsive documents." EOP's Mot. for Protective Order at 10.

EOP submitted two declarations addressing the feasibility and burdensomeness of restoring and searching through e-mail and files deleted from computer hard drives. These declarations were prepared by Laura Crabtree, the Desktop Systems Branch Chief of the Information Systems and Technology Division ("IS & T") at EOP's Office of Administration and Daniel Barry, a Computer Specialist at IS & T. It is the EOP's position that these declarations demonstrate that the burden and cost with complying with plaintiffs' discovery requests on this issue outweigh the remote likelihood that such discovery would lead to any relevant information.

The declaration of Crabtree discusses the feasibility of restoring files that have been deleted from EOP hard drives, of hard drive restoration of files that have been archived, and for searching any restored files. The declaration also addresses her review of records that reflect the assignment and use of personal computers ("PCs") within the EOP. According to Crabtree's declaration, at least 95% of the PCs in the White House Office and 98% of the PCs EOP-wide run on the Windows NT 3.51 operating system after having been upgraded from the DOS operating system in 1996. EOP. Mot. for Protective Order ¶ 5. Crabtree states that it is not possible to restore files that have been deleted from the NT system or to restore deleted files on a DOS hard drive once the hard drive has been converted to the NT system. *Id.* ¶ 6–7. For this reason, the process of conversion from DOS to Windows NT completely destroys any deleted data that may have existed on a hard drive in the DOS format and an attempted restoration of previously deleted files on 98% of the EOP PCs would not result in the recovery of any data. *Id.* ¶ 7.

Crabtree also discusses the process of restoration of deleted files on the remaining 2% of the EOP PCs that continue to run on the DOS system. Crabtree states that for the 2% of the EOP PCs still operating on the DOS system, it is only possible to restore a deleted file if the data have not been overwritten by later use or if the defragmentation utility has not been run. *Id.* ¶ 8. For the files that could conceivably be restored, a PC operator must run a utility to undelete the

---

**2.** In passing, the court notes that it does not agree with the analogy drawn by the EOP to discovery in FOIA cases. As plaintiffs correctly note, "[d]iscovery in a FOIA action is extremely limited," *Katzman v. Freeh*, 926 F.Supp. 316, 319 (E.D.N.Y.1996), especially when compared to discovery conducted in a traditional civil action. The court's conclusion is based solely on the fact that plaintiffs failed to rebut the evidence proffered by the EOP regarding the extent of the search conducted and the absence of any perceived deficiencies in this search.

deleted files and convert them to a readable format. *Id.* ¶ 9.

The restoration of an archived hard drive of a user that has terminated his or her employment with the EOP is also discussed. Crabtree estimates that a search through one employee's "C" or "F" drives would require approximately 265 hours and costs of approximately $15,675 in contractor fees. *Id.* ¶ 13. The process of performing a search on shared drives is described by Crabtree as equally burdensome. This type of search would initially require approximately two days and $880 in contractor fees to determine which shared drives on which network file and mainframe servers one user had access to during a relevant time period. Once this has been determined, efforts to conduct a "keyword" search would have to be undertaken. A search of all relevant files would require approximately 4,273 hours and would cost approximately $235,015 in contractor fees. *Id.* ¶ 18.

The declaration of Daniel Barry addresses the e-mail systems that most components of the EOP use. Barry states that prior to July 1994, there existed no system for archiving e-mail in a word-searchable format. *Id.* Ex. D ¶ 4. Prior to this date, e-mail was stored daily on back-up tapes and produced approximately 5,500 tapes containing backed-up e-mail for the period of January 1993 to July 1994. *Id.* Barry states that IS & T is in the process of restoring and reconstructing pre-July 1994 e-mail to a word searchable format. *Id.* ¶ 10. This restoration requires five to seven working days of around-the-clock processing at a cost of approximately $20,000 for each month of e-mail. *Id.* It is anticipated that this project will be completed in the middle of 1998.

Since July 1994, the e-mail has been maintained in a word searchable format and has been archived weekly in an on-line format. According to Barry, to run one search on one month of EOP e-mail records requires approximately six to nine hours of computer processing time. *Id.* ¶ 13. The declaration also demonstrates that less narrow searches require substantially longer periods of time to conduct. *Id.*

In an effort to challenge the conclusions reached by Crabtree and Barry, plaintiffs submit the declaration of Paul Hill who describes himself as a consultant with 35 years of experience in computer software, computer system design, and the communications industry. Pls.' Opp. Ex. 5 ¶ 1. Hill suggests that the methodology proposed by Barry and Crabtree is inconsistent with the generally accepted procedures used to locate specific files that contain information within a large volume of computer data. Hill proposes a system that he states is more efficient and costing only a nominal price. *Id.* ¶ 3.

It is the court's conclusion that there is no basis for concluding that Hill is qualified to address the EOP's computer and e-mail systems or refute the declarations of Barry and Crabtree. Hill not only fails to provide the court with any educational background, he also fails to demonstrate that he is qualified to comment on the system of computers and e-mail specific to the White House or the EOP. Moreover, the court finds that the Crabtree and Barry declarations are more persuasive given the declarants' familiarity with the systems at issue.

For this reason, the court concludes the EOP is not required to completely restore all deleted files and e-mail as plaintiffs insist. Plaintiffs are able to pursue discussions with the Department of Justice regarding targeted and appropriately worded searches of backed-up and archived e-mail and deleted hard drives for a limited number of individuals. *See* EOP's Reply to Pls.' Opp. at 8 n. 7. Moreover, plaintiffs are not precluded from deposing individuals with relevant knowledge of the computer and e-mail systems at the offices relevant to this case in an effort to determine whether any other means exist to restore the deleted files or e-mail of specific individual's computers.

### C. Objections to Notice of Rule 30(b)(6) Deposition

The EOP asserts that plaintiffs' Notice is objectionable because it is burdensome, overbroad, and not reasonably calculated to lead to admissible evidence. Plaintiffs seek to depose one or more representatives from the EOP to testify on its behalf about nine cate-

gories of information. In its motion for protective order, the EOP objects to both the scope of the requests in general and each request specifically.

### 1. *Plaintiffs' EOP–Wide Requests*

■ The EOP objects to the broad scope of plaintiffs' Notice with respect to the particular offices from which documents are sought as well as plaintiffs' failure to specify any date limitation in the Notice. The EOP contends that the only components of the EOP relevant to this case are the White House Office and the Office of Administration to the extent that the Office of Administration provides computer and e-mail support throughout EOP. The EOP argues that a Rule 30(b)(6) notice requiring testimony by knowledgeable officials from each of the other EOP components on the matters at issue is extraordinarily broad on its face. EOP's Mot. for Protective Order at 26.

The EOP also raises an objection to the fact that the vast majority of the Rule 30(b)(6) motion has no date restrictions of any kind. The only exception cited by the EOP is plaintiffs' request for information about the systems for the creation or transmittal of e-mail dating back to January 2, 1992. This court's review of plaintiffs' Notice of Rule 30(b)(6) Deposition confirms that plaintiffs have failed to include any other date restriction or limitation.

Rule 26(c) of the Federal Rules of Civil Procedure permits a court to make any order which justice requires to protect a party or person from undue burden including "that the scope of the disclosure or discovery be limited to certain matters." Fed.R.Civ.P. 26(c)(4). In the instant case, the EOP has demonstrated that plaintiffs' notice for deposition is unduly burdensome to the extent that it seeks deposition testimony from individuals outside the White House Office or the Office of Administration to the extent that the Office of Administration provides computer and e-mail support to the EOP. For this reason, the EOP is not required to provide a representative for deposition regarding matters not related to the workings of the White House Office or the Office of Administration to the extent that this office offers computer or e-mail support for the EOP. Plaintiffs' notice for deposition must also be limited to the relevant time period— after January 1, 1992.

### 2. *EOP's Objections to Deposition Requests 1, 3, and 8*

■ The EOP groups together its objections to deposition requests 1, 3, and 8. Request 1 seeks to have a deponent testify regarding "the system of files maintained to store, protect, and preserve documents and other things, including audio and videotape recordings and computer files, including electronic mail, generated, examined, produced, reviewed, … sent, received, forwarded, transmitted, copied, retrieved, kept or found in the Executive Office of the President, or any of its components, including, but not limited to all of the offices of the White House Counsel and the offices of the First Lady." EOP's Mot. for Protective Order Ex. A at 1. Deposition request 3 seeks to have a deponent testify regarding "the system of recording devices, whether audio or video, used to record sounds or pictures in any of the office, common, residential, and/or other areas of the White House and the entirety of the [EOP], including the Office of White House Counsel and the Office of the First Lady." *Id.* at 2. Deposition request 8 seeks to have a deponent testify regarding "any recording, transcription, communication, printing, filing, and any and all recordation devices used by Hillary Rodham Clinton and others in the White House in their governmental, official, and/or allegedly private capacities." *Id.* at 2–3.

The EOP objects to providing a representative to be deposed pertaining to these matters on the grounds that plaintiffs' Notice is unduly burdensome and overbroad. The EOP suggests that numerous difficulties exist in responding to the requests for deposition set forth by plaintiffs and take particular issue with the several undefined terms in the request including "recording systems" and "recording devices." The EOP interprets request 8 as requiring "every secretary in the White House to testify about his or her filing systems, would require a deponent to address how the telephone system works, and

would require additional deponents to testify about the mechanics of all computer printers." *Id.* at 29. Moreover, the EOP objects to the requests to the extent that it requires deposition testimony regarding whether every White House employee in their personal capacity owns any device relevant to request 8.

It is important to note from the outset that the court has already modified plaintiffs' Notice to the extent that it seeks deposition testimony regarding matters outside the White House Office and prior to the relevant time period of January 1, 1992 and thereafter. In their opposition, plaintiffs also offer some modification or at least a clarification of what is being sought in the deposition requests at issue. Plaintiffs state that they are seeking to know "in general terms, what kinds of systems are used and the capabilities of those systems, so that they can then know what types of evidence are likely to exist. . . ." Pls.' Opp. at 8. Plaintiffs also assure the court that they are not seeking technical specifications for common office equipment such as dictaphones or VCR. *Id.* at 8. When combined with the court's modifications explained above, plaintiffs' deposition request is reasonable when balanced against any hardship or burden that may be suffered by the EOP. The court is convinced that the request, with its present modifications, provides sufficient protection to the EOP so as to not be unduly burdensome or overbroad.

### 3. *EOP's Objections to Deposition Request 2*

■ Deposition request 2 seeks to have a deponent testify regarding "the system or systems used since January 1, 1992, to create, transmit, store, retrieve, and delete so-called 'electronic mail' (said representative(s) to have knowledge of the maintenance and operation of all electronic mail systems, including, but not limited to, the construction of so-called 'userid tables' used in connection with such electronic mail systems)." EOP Mot. for Protective Order Ex. A at 1–2. It appears that the EOP relies upon its prior objections to the production of archived and backed-up e-mail.

Despite the legitimacy of the EOP's arguments in that context, there has been no showing made that permitting plaintiffs to depose an individual with knowledge of the e-mail system within the White House Office would saddle the EOP with an undue burden or hardship. Because the court has limited the scope of all depositions to be conducted pursuant to plaintiffs' Notice as set forth above, sufficient protection exists to ensure that any burden, which the court perceives to be minimal, will be avoided with respect to this request.

### 4. *EOP's Objection to Deposition Request 4*

■ Deposition request 4 seeks to have a deponent testify regarding the computer systems commonly known as or referred to as "Big Brother" and/or "WHODB [White House Office Database]." EOP's Mot. for Protective Order Ex. A at 2. The EOP states that the WHODB is a comprehensive database that serves as a resource for names, addresses, and other related information for communicating with persons who have contact with the President and White House officials. *Id.* at 30. The EOP describes the WHODB as the equivalent of a social rolodex and completely unrelated to the underlying allegations in this case. Furthermore, in her declaration, Sally Paxton states that "the WHoDB does not track any information related to FBI background investigations of current or former employees." *Id.* Ex. B at 6.

Plaintiffs contend that discovery on this issue is warranted in light of certain documents produced in conjunction with the deposition of James Carville. Carville produced to plaintiffs a file labeled "Filegate" that included a newspaper article on the WHODB. Plaintiffs conclude that if there was no connection between the database and Filegate, Carville would not have kept this article in his "Filegate" file.

Although he does not occupy an official White House position, Carville's deposition demonstrates that he does possess information relevant to the workings of the White House. Plaintiffs' conclusion is not unreasonable and they are entitled to depose an

individual knowledgeable about this potential source of information. Accordingly, the EOP's motion for protective order with respect to deposition request number 4 is denied.

### 5. *EOP's Objection to Deposition Request 5*

■ Deposition request 5 seeks to have a deponent testify regarding "the system for controlling access to the White House by any official, employee, detailee, resident, volunteer, intern, visitor or overnight guest." EOP's Mot. for Protective Order Ex. A at 2. The EOP interprets this request as being "aimed at obtaining information about the security systems at the White House" and therefore, the EOP suggests that it "is more appropriately directed to the U.S. Secret Service." *Id.* at 30.

Presently before the court is a motion for protective order filed by the United States Secret Service filed in response to plaintiffs' service of a subpoena on the Secret Service seeking documents and deposition testimony on matters relating to access to the White House. At the present time, the court is awaiting full briefing on the issues presented with respect to that motion. It is the opinion of the court that it is appropriate to grant the EOP's motion for protective order with respect to deposition request 5, at this time, to permit the court to fully consider the motion of the Secret Service when that motion is ripe.

### 6. *EOP's Objection to Deposition Request 6*

■ Deposition request 6 seeks to have a deponent testify regarding "all measures for compliance at the [EOP], including but not limited to, the Office of White House Counsel, and the Office of the First Lady, with the requirements of the National Archives Act of 1934, the National Archives and Records Administration Act of 1984, the Presidential Libraries Act, the Presidential Libraries Act of 1986, the Presidential Recordings and Materials Preservation Act, and the Presidential records Act of 1978, and any other relevant statute, rule, or regulation applicable to the preservation and/or disposal of documents generated in whatever formal, and stored, on whatever media in the [EOP], including the Office of White House Counsel and the Office of the First Lady." EOP's Mot. for Protective Order at 2.

The EOP contends that compliance with these statutes has absolutely no relevance to the underlying issues in this case. The EOP states that "whether or not the summary reports or any other documents were handled in accordance with non-Privacy Act record-keeping statutes ... would not affect whether EOP complied with the Privacy Act." *Id.* at 32–33. Moreover, the EOP suggests that "[t]estimony on all the various record-keeping statutes identified by plaintiffs would only lead to time-consuming satellite litigation which would delay proper discovery on the matters at issue in *this* litigation." *Id.* at 33.

It is the conclusion of this court that plaintiffs are entitled to pursue whether an adverse inference may be drawn from noncompliance with the statutes and regulations at issue. Plaintiffs' entitlement is, of course, limited to regulations and statutes applicable to the White House Office and the Office of Administration, to the extent that this office provides computer and e-mail support to the EOP, during the relevant time period. Accordingly, the EOP's motion for protective order with respect to this request is denied.

### 7. *EOP Objections to Deposition Request 7*

Deposition request 7 seeks to have a deponent testify regarding "systems for recording the acquisition, location, and/or disposition of personal electronic computers used by any official, employee, detailee, resident, volunteer, intern, visitor or overnight guest in the Executive Office of the President, including the Office of White House Counsel, and the Office of the First Lady." EOP's Mot. for Protective Order Ex. A at 2. As stated above, this request is modified so as to be limited to the White House Office and the Office of Administration, to the extent that this office provides computer and e-mail assistance to the EOP, after January 1, 1992.

8. *EOP Objections to Deposition Request 9*

■ Deposition request 9 seeks to have a deponent testify regarding "any other matters relevant to this case, or which may lead to the discovery of relevant evidence." EOP Mot. for Protective Order Ex. A at 3. Rule 30(b)(6) of the Federal Rules of Civil Procedure requires that a party seeking a deposition pursuant to this rule must "describe with reasonable particularity the matters on which examination is requested." Fed. R.Civ.P. 30(b)(6). It is evident from the face of request 9 that plaintiffs have not complied with this requirement. Accordingly, the EOP is not required to comply with the deposition notice with respect to request 9.

D. *Objections to Plaintiffs' Schedule of Documents*

■ At the conclusion of plaintiffs' Notice, deponents are "directed to bring to the deposition the documents and things identified in Exhibit A." EOP's Mot. for Protective Ord.Ex. A at 3. The Schedule of Documents attached as Exhibit A contemplates that the deponent will produce five separate categories of documents. The deponent is directed to produce all documents that refer, relate, reflect or concern in any way the matters discussed as the subject of testimony in the Rule 30(b)(6) deposition, including but not limited to: (1) documents which describe and/or show how the subject recordation systems are set up and operated, as well as their technical requirements; (2) documents which show and reflect the recordation systems themselves; (3) documents which show or reflect how the EOP searched for documents in response to plaintiffs' First request to Defendant Executive Office of the President, dated October 9, 1997, and who was involved in the search, and whether President Clinton, Hillary Rodham Clinton, and others in the EOP working under their supervision were consulted; (4) any and all records, correspondence, notes, communications, or other documents concerning or relating to any matters pled or alleged in the complaints of this case; and (5) any and all documents and things which refer or relate in any way to the matter commonly known as "Filegate." The

EOP objects to the production of documents as requested by plaintiffs.

As an initial matter, the EOP is not required to respond to the request for documents to any extent that the request is inconsistent with the court's conclusions within this Memorandum and Order. This means that the request for documents does not require production of any documents from outside the White House Office or the Office of Administration, to the extent that this office provides computer and e-mail support for the EOP, or for dates prior to January 1, 1992. Moreover, the EOP is not required to produce any documents relating to the scope of the previous search for documents in response to plaintiffs' first request dated October 9, 1997. Plaintiffs' catch-all requests for any documents which refer or relate in any way to the matter commonly known as "Filegate" and any and all records relating to this case are also impermissibly vague and accordingly, the EOP is not required to respond to these requests.

With respect to the remaining requests, the court agrees with the EOP that the requests are overbroad and may subject the EOP to undue burden and as such, the EOP is not required to produce responsive documents in conjunction with the Rule 30(b)(6) deposition. However, the court encourages the EOP to comply with the requests to the extent possible. Plaintiffs will be given an opportunity to submit additional, more narrowly tailored requests after the Rule 30(b)(6) depositions have been conducted. Furthermore, plaintiffs will not be precluded from conducting any additional depositions necessitated by the production of documents in response to any subsequent document requests made by plaintiffs.

III. *Conclusion*

For the reasons set forth herein, the Motion by the Executive Office of the President for a Protective Order Quashing Plaintiffs' Notice of Deposition and Request for Documents Pursuant to Rule 30(b)(6) is DENIED in part and GRANTED in part. The parties are instructed to comply with the Rule 30(b)(6) Notice of Deposition and Request for Documents in a manner consistent with the

analysis set forth in this Memorandum and Order.

SO ORDERED.