# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 22, 2019      Decided December 20, 2019

No. 18-5123

RYAN NOAH SHAPIRO,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01399)

---

*Jeffrey Light* argued the cause and filed the briefs for plaintiff-appellant.

*Brian J. Field*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GARLAND, *Chief Judge*, GRIFFITH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: In 1982 the Federal Bureau of Investigation's then-Director William Webster published an article broaching the subject of "mosaic theory" and describing a "test" the FBI conducted called "Operation Mosaic." Webster reviewed the way in which "seemingly innocuous information [released under the Freedom of Information Act] can be combined with records released at a different time or with the requester's personal knowledge," leading to revelations about sensitive FBI sources or investigations—just as the individual tiles in a mosaic may combine to reveal a complex meaning. Joint Appendix ("J.A.") 130–31. In support, the Director quoted one of our decisions, *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980), where we wrote: "[E]ach individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself."

Appellant Dr. Ryan Shapiro has sought to use FOIA, 5 U.S.C. § 552 et seq., to explore the FBI's thoughts about and possible uses of mosaic theory in its handling of FOIA cases. Dr. Shapiro filed a series of FOIA requests on the subject, asking among other things for files that responded to the search terms "Operation Mosaic" and "mosaic study" in various FBI databases. J.A. 147–48. And he asked for "all other records constituting or referring to Operation Mosaic." J.A. 148. Later, he filed a FOIA request for records relating to his FOIA requests.

Unsatisfied with the agency's productions, Dr. Shapiro went to court, where he lost on summary judgment. In this appeal, he challenges the FBI's explanations that certain files were not responsive to his request or were destroyed.

Because this case comes to us at summary judgement, we review the district court's determination *de novo*. See *Sussman*

*v. U.S. Marshals Serv.*, 494 F.3d 1106, 1111 (D.C. Cir. 2007). We must draw all reasonable inferences in Dr. Shapiro's favor and can rule for the FBI only if there is no material issue of fact in dispute. See *Inst. for Justice v. IRS*, 941 F.3d 567, 569 (D.C. Cir. 2019). As the FBI did not sufficiently explain its determinations, we reverse the district court's contrary ruling, vacate the decision in part and remand for further proceedings.

\* \* \*

We start with a set of issues arising out of the FBI's handling of a "search slip" that evidently served as an intermediate step in the Bureau's search for "mosaic study" in its Automated Case Support database ("ACS"). A "Universal Index" search in ACS yields information indexed in the automated databases that preceded ACS itself. Per the FBI's affiant, the indices cover "a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest." J.A. 37.

The FBI provided the search slip in question, actually a spreadsheet, in response to Dr. Shapiro's FOIA request for information about his FOIA requests. According to the FBI's affiant, search slips keep track of the "preliminary results of the [agency's] search," and the FBI "routinely lists all potentially responsive files on a search slip for administrative tracking purposes."

In this case, the search slip identified 28 files as "responsive" or "potential[ly]" responsive. J.A. 104–05. Evidently as a result of further examination, the FBI reclassified the files, informing Dr. Shapiro that no records met his request. In response to Dr. Shapiro's complaint that the FBI had withheld files indicated on the search slip as responsive, the FBI supplied an affidavit explaining that on review the files were found "either non-responsive because the files did not

relate to the specifics of [Dr. Shapiro's] request or were legally destroyed." J.A. 181–82. As to 16 numbered files, the affidavit specified which—whether they were non-responsive or destroyed. As to certain files, whose numbers had been redacted, the FBI response didn't even disclose which of those two categories the FBI believed applicable.

(We pause to note that the FBI may not have needed to release its search slip to Dr. Shapiro in the first place. FOIA's exemption 5 permits agencies to withhold "pre-decisional and deliberative" materials. *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). Exemption 5 might have applied to the search slip in this case. See *Assassination Archives & Research Ctr. v. CIA*, 781 F. Appx 11, 13 (D.C. Cir. 2019) (per curiam) (unpublished). Nevertheless, the FBI gave Dr. Shapiro the search slip, enabling him to marshal it as evidence.)

In three respects, the FBI's explanation doesn't provide enough information to permit ruling for the government on summary judgement.

First, the affidavit does not explain how the agency concluded that the files preliminarily listed as responsive did not relate to Dr. Shapiro's request. (Dr. Shapiro makes no claim as to the file listed on the search slip as only potentially responsive. Reply Br. 15.) We recognize that the search slip purported only to record a preliminary finding. And obviously the law should not force an agency to jump through complex hoops merely because a preliminary review seemed positive; such a rule would likely incline an agency to take a rather grudging view in its first screening. What's more, in FOIA cases, courts frequently rely on "reasonably detailed affidavit[s]" to affirm the nature and adequacy of an agency's search. See *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (citation and quotation omitted). And we give these agency affidavits "a presumption of good faith." *SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). But where a record's presence on a search slip arose from some sort of "hit" in the FBI's indexing system, and especially where the search slip distinguished between responsive and *potentially* responsive files, the FBI can obtain summary judgment (as to files originally identified as "responsive") only by offering some non-conclusory justification for each ultimate classification as non-responsive. *Id*. at 1201 (affidavit cannot be "conclusory").

Second, the affidavit says nothing—at least nothing clear—about the files whose numbers were redacted, though it identifies each numbered file as either non-responsive or destroyed. As a result, we have no idea whether those redacted records—originally listed as responsive in the search slip— were not responsive or had been destroyed (and which). This leaves us with "positive indications of overlooked materials" and "substantial doubt" about the adequacy of the government's search. See *DiBacco*, 795 F.3d at 188 (citation and quotation omitted).

Third, the affidavit does not explain why or how the FBI knew that certain files had been destroyed. To be sure, "[i]f the agency is no longer in possession of" files, it need not "take further action in order to produce" them. *SafeCard*, 926 F.2d at 1201. But affidavits must provide "adequate assurance that the documents were in fact destroyed." *Id*. at 1201; cf. *Weisberg v. DOJ*, 627 F.2d 365, 369 (D.C. Cir. 1980) (holding that a statement of belief that a record had been destroyed did not constitute a sufficient explanation). True enough, the FBI's affidavit alludes to its practice of handling record retention and disposal "under supervision of the National Archives and Records Administration," J.A. 182 n.3, perhaps implying that these were destroyed pursuant to regular retention schedules. Cf. *Agolli v. DOJ*, 2016 WL 6238495, at *1 (D.C. Cir. 2016) (per curiam) (unpublished) (affirming agency's production

when files had been "destroyed in accordance with its retention schedules"). But the affidavit must set forth not just an agency's conclusion that it no longer possesses a document but also some underlying fact or facts to show the document's likely fate. At oral argument, government counsel suggested that the agency recorded the files' destruction in a log. If presented in an affidavit, such an explanation would suffice.

On remand, the district court should permit the FBI to submit further evidence to supplement these three deficiencies and to file a renewed motion for summary judgment.

\* \* \*

The FBI also ran a search for the term "Operation Mosaic" in its Electronic Case Filing System ("ECF") and Sentinel databases. Unlike the ACS index, an "ECF text search returns 'hits' for search terms located *within* all electronically uploaded documents." J.A. 178 (emphasis added). Sentinel likewise searches a document's full text, as well as some additional information. In everyday terms, searching ACS seems akin to opening a book to a specific index entry and finding the page numbers which the indexer identified as relevant. An ECF or Sentinel text search, by contrast, combs through the *entire* (metaphorical) book to identify each instance in which the word appears in the text, as one might with an e-book.

The ECF and Sentinel searches for Operation Mosaic returned five hits, all of which the FBI concluded did not respond to Dr. Shapiro's request. According to the FBI, two of the files concerned "a Human Trafficking Operation, and the term 'Mosaic' was located in the business name that provided services to the victims." J.A. 289. Dr. Shapiro disclaims any interest in these files. See Appellant's Br. 35–36 ("Although arguably within the scope of Dr. Shapiro's broad requests, he

does not challenge the FBI's non-responsiveness determination as to these two records.").

For the other three files, the FBI's affiant simply stated that the files "consisted of counterintelligence and organized crime information." As to these, Dr. Shapiro offers two arguments for why he should receive them. He first points to the argument in Director Webster's own article that the mosaic effect's impact was "perhaps greatest in our organized crime program and in our foreign counterintelligence program." J.A. 117. Thus, he says, the FBI needs to provide more explanation for why those files' references to the same topics did not involve Director Webster's Operation Mosaic. We agree, especially considering the FBI's having explained the use of "mosaic" in the two withheld records relating to human trafficking.

Because of our decision to remand for a fuller explanation, we need not address Dr. Shapiro's second argument: These three files—even if they reference a different Operation Mosaic—fell within the literal terms of his request directly, as they reference the term "Operation Mosaic." Though Dr. Shapiro had framed his request by reference to the mosaic effect identified by Director Webster, he had added that his inclusion of that framing was "to enable the FBI to locate the requested records [and] not intended to limit the scope of my request." Reply Br. 24; J.A. 157. At oral argument counsel explained that Dr. Shapiro sought these records "because of [a] concern that the FBI would make erroneous determinations about what is of interest to him and what is not," Oral Argument at 47:14, a plausible rationale for his wishing to see the files. If the FBI offers a fuller explanation on remand, he may be satisfied, and neither the district court nor we will need to address the legal questions his second argument raises. Cf. *LaCedra v. Exec. Office for U.S. Att'ys.*, 317 F.3d 345, 348 (D.C. Cir. 2003).

8

\* \* \*

In his briefs, Dr. Shapiro argued that pursuant to another request on appeal here the FBI must conduct an ECF full text search of "FBI Research Matters" files (known as "94" files) for ones referring to the Freedom of Information Act and/or the Privacy Act.  See Appellant Br. 11.  Before oral argument, the government agreed to conduct that search.  We thus agree to the parties' joint request that we vacate the district court's opinion on this point and remand the matter, preserving Dr. Shapiro's ability to challenge the adequacy of the FBI's search.

\* \* \*

The decision of the district court is reversed with respect to the files identified as "responsive" in the search slip and the three ACS/Sentinel files, vacated with respect to the 94 files, and remanded for further proceedings not inconsistent with this opinion.

*So ordered.*