**ROCKWELL INTERNATIONAL CORP., Plaintiff,**

**v.**

**H. WOLFE IRON AND METAL CO.,** New Castle Junk Company, Inc., Wilkoff Company, Lee Wilkoff, Phyllis Wilkoff, Randall Wilkoff, Arthur Epstein, Roland Levine, Steven Levine and Bruce Pickel, Defendants.

**Civ. A. No. 82–2161.**

United States District Court, W.D. Pennsylvania.

Dec. 15, 1983.

Joseph A. Katarincic, David A. Borkovic, Pittsburgh, Pa., for plaintiff.

John D. Leech, John J. Eklund, Cleveland, Ohio, Stanley Greenfield, Richard H. Martin, Joan P. Feldman, William M. Wycoff, Carl L. Lopresti, James M. Plasynski, Pittsburgh, Pa., for defendants.

## MEMORANDUM AND ORDER

MENCER, District Judge.

This memorandum and order will address Rockwell International Corporation's motions to compel responses from Lee and Randall Wilkoff. Those areas of inquiry governed by this ruling are the plaintiff's deposition of Lee Wilkoff, the plaintiff's first set of interrogatories to Lee Wilkoff, the plaintiff's deposition of Randall Wilkoff, the plaintiff's first set of interrogatories to Randall Wilkoff and the plaintiff's request that Randall Wilkoff produce handwriting exemplars.

*Handwriting exemplars of Randall Wilkoff*

■ Initially, we find that Randall Wilkoff, a defendant in this civil action, cannot be compelled to create, upon the request of the plaintiff, documentary evidence which is not already in existence in some form. Rule 34(a), Fed.R.Civ.P., the rule under which the request for exemplars was implicitly made, is limited in its scope to documents "which are in the possession, custody or control of the party upon whom the request is served." "Rule 34 cannot be used to require the adverse party to prepare, or cause to be prepared, a writing to be produced for inspection, but can be used only to require the production of things in existence." *Soetaert v. Kansas City Coca Cola Bottling Co.*, 16 F.R.D. 1, 2 (W.D.Mo. 1954) (citations omitted).

■ The defendants' refusal to answer interrogatories and deposition questions put to them is based on a claimed Fifth Amendment privilege against self-incrimination. In this circuit, the validity of a witness' invocation of his Fifth Amendment privilege is tested by a two-step procedure. First, the district court must determine whether "there appears to be a conceivable possibility that the witness could be linked to a crime against the United States." *American Cyanamid Company v. Sharff*, 309 F.2d 790, 794 (3d Cir.1962). If this initial inquiry is answered affirmatively, the court must determine whether the facts sought to be elicited by the questions could "form a link in the chain of evidence necessary to convict [the witness] ...." *Id.* at 797. Application of the privilege should not be denied unless it is " '*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answers *cannot possibly* have such a tendency' " to incriminate. *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951), citing *Temple v. Commonwealth*, 75 Va. 892, 898 (1881).

■ The privilege against self-incrimination may be invoked by a compelled witness "in any proceeding when his answers to questions 'might incriminate him in future criminal proceedings.' " *United States v. Mahady & Mahady*, 512 F.2d 521, 525 (3d Cir.1975), citing *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). And, the Supreme Court has cautioned that a witness cannot be required to prove the hazard involved in his answering the contested questions. To do so would compel him "to surrender the very protection which the privilege is designed to guarantee." *Hoffman*, 341 U.S. at 486, 71 S.Ct. at 818. "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. at 818–19.

*Plaintiff's first set of interrogatories*

The interrogatories served by the plaintiff on both Lee and Randall Wilkoff are exactly the same in number and content. This portion of our ruling will apply to both defendants.

Our·starting point is Rule 33, Fed.R. Civ.P., the rule of civil procedure governing interrogatories to parties. Rule 33(a) requires that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer." Fed.R. Civ.P. 33(a). We note that the defendants have failed to file any type of formal response to the interrogatories. We will require them to file either their answers or objections, along with the reason for each objection.

This action is being pursued within the context of federal antitrust laws. The plaintiff has alleged, among other things, a violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, the thrust of which is that the defendants involved in these motions, "and others not named herein, combined or conspired to fix maximum prices that would be paid for scrap produc-

ed at the Axle Plant and the Spring Plant, to allocate purchases from certain scrap producers among themselves and to unreasonably restrain trade." Complaint ¶ 18. The complaint alleges that the Wilkoff Company or those individuals in control of it engaged in activities that substantially affected interstate commerce, that they conspired or combined with others, and that the purpose of the alleged conspiracy and combination was to restrain trade. The specific allegation against the Wilkoffs is that they received a commission from other scrap dealers as a result of their agreement to underbid these other dealers for the purchase of plaintiff's scrap metal. It is clear that proof of facts that support these allegations could result in criminal liability on the part of the defendants. 15 U.S.C. § 1.

■ The forty interrogatories propounded to defendants Lee and Randall Wilkoff fall into four categories. Interrogatories Nos. 1–17 and 24 concern the Wilkoff Company's involvement in interstate commerce. Interrogatories Nos. 18–23 concern the quality of plaintiff's scrap. Interrogatories Nos. 25–34 concern the Wilkoff Company's purchase of scrap from the plaintiff and the company's sales of scrap. Interrogatories Nos. 35–40 request the identification of the Wilkoff Company's officers, directors, stockholders, employees, bank accounts and office employees. We do not believe that answers to Interrogatories Nos. 35–40 could tend to incriminate either Lee or Randall Wilkoff and, therefore, will order them to answer those interrogatories. The information sought in Interrogatories Nos. 1–34 is of the type that could conceivably operate as a link in the chain of evidence necessary to convict an individual of Sherman Act violations, and for that reason, presents the Court with troubling questions regarding the responsibility of the defendants to answer these interrogatories.

■ Lee and Randall Wilkoff are in the unenviable position of being both individual named defendants and corporate officers of the Wilkoff Company. Corporations are not protected by the privilege against self-incrimination and a corporate agent has a duty to produce the corporation's records, even where the records might incriminate him personally. *Wilson v. United States*, 221 U.S. 361, 384, 31 S.Ct. 538, 545, 55 L.Ed. 771 (1911). Corporate agents do, however, retain their personal privilege against self-incrimination. *Curcio v. United States*, 354 U.S. 118, 124, 77 S.Ct. 1145, 1149, 1 L.Ed.2d 1225 (1957). It is well-settled that the privilege is purely personal, *United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944), and that "[i]t protects the individual from any disclosure, in the form of oral testimony, documents or chattels, sought by legal process against him as a witness." *Id.* The *White* court succinctly explained the theory behind this limitation in the scope of the privilege.

> Basically, the power to compel the production of the records of any organization, whether it be incorporated or not, arises out of the inherent and necessary power of the federal and state governments to enforce their laws, with the privilege against self-incrimination being limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records.

*White*, 322 U.S. at 700–01, 64 S.Ct. at 1251–52.

■ The information sought by the interrogatories is of the type that would, in all likelihood, be contained in corporate, rather than personal, records. Lee and Randall Wilkoff, as president and vice-president of the Wilkoff Company, are the corporate officers most likely to have control of the information sought. Although their doing so may ultimately lead to the release of material which is incriminating as to them, the defendants must answer those portions of the interrogatories the answers to which are contained in Wilkoff Company records. If we were to rule otherwise the result would be the creation of a safe zone within which representatives of corporations could conceal the activities of the corporation and its agents from public

scrutiny simply by claiming the Fifth Amendment privilege the representatives enjoy in their personal capacity. The outcome here would be to block from the discovery of the plaintiff any substantive information regarding the Wilkoff Company operations because of the potential incrimination of Lee and Randall Wilkoff. This would, in effect, create a privilege where none exists. *See Bellis v. United States*, 417 U.S. 85, 90, 94 S.Ct. 2179, 2184, 40 L.Ed.2d 678 (1974). Our ruling on this point should not be construed as requiring the defendants to reveal information contained in their personal records which might tend to incriminate them.

### Deposition testimony

■ The first area of inquiry for which the plaintiff seeks to have the Court compel the testimony of the defendants is "the facts claimed to support the affirmative defenses set forth in [the defendants' Answers] to Plaintiff's Complaint." The defendants forward, as justification for their refusal to answer inquiries into this area, a blanket application of the privilege against self-incrimination. They do not, however, offer any support for their contention that the privilege is applicable, *Sharff*, 309 F.2d at 794, and the Court is unable to determine how inquiry into such affirmative defenses, which are directed to the activities of the plaintiffs and other defendants, threatens the defendants. We will direct the defendants to answer questions going to their assertion of affirmative defenses.

■ The privilege against self-incrimination is personal to the witness; he cannot invoke the privilege of a third party in order to avoid answering questions or producing documents which may incriminate that third party. *White*, 322 U.S. at 704, 64 S.Ct. at 1254. The defendants will be directed to answer those portions of the deposition questions which relate to the activities of third parties. This ruling extends to cover members of the defendants' families. *In re Matthews*, 714 F.2d 223, 224 (2nd Cir.1983).

Finally, as regards those areas of inquiry which relate to activities of the Wilkoff Company, our discussion in the portion of this memorandum which dealt with the plaintiff's interrogatories to the defendants is equally applicable here. We will direct the defendants to answer questions related to the operation of the company based on information available through company records. Our order will set out those specific sub-paragraphs of the plaintiff's motions which the defendants must address.

### ORDER

AND NOW, this 15th day of December, 1983, for the reasons set forth in the accompanying memorandum, the plaintiff Rockwell International Corporation's Motions to Compel Answers and Responses from defendant[s] Lee Wilkoff and Randall Wilkoff are GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that:

1. plaintiff's motion to compel handwriting exemplars of defendant Randall Wilkoff is DENIED;

2. defendants Lee Wilkoff and Randall Wilkoff shall file either answers or objections, along with reasons for the objections, to each of the plaintiff's interrogatories, consistent with our ruling in the accompanying memorandum;

3. defendants Lee Wilkoff and Randall Wilkoff shall testify to facts claimed to support their assertion of the affirmative defenses set forth in their respective Answers;

4. defendants Lee Wilkoff and Randall Wilkoff shall testify to subject areas regarding the activities of third parties, where such testimony will not violate the witness' personal privilege against self-incrimination;

5. defendant Lee Wilkoff shall testify to the subject areas identified in the following subparagraphs of the plaintiff's motion to compel Lee Wilkoff—1(b), (i), (m), (n), (o), (p);

6. defendant Randall Wilkoff shall testify to the subject areas identified in the following sub-paragraphs of the

plaintiff's motion to compel Randall Wil-koff—1(b), (h), (i).