**Cara Leslie ALEXANDER,
et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF
INVESTIGATION, et
al., Defendants.**

**Civ.A. Nos. 96–2123, 97–1288(RCL).**

United States District Court,
District of Columbia.

May 17, 2000.

---

Larry Klayman, Judicial Watch, Inc., Washington, D.C., for plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, D.C., for defendants EOP and FBI.

David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, D.C., for defendant Hillary Rodham Clinton.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion [944] to Compel Production of Documents Regarding Second Request to the Executive Office of the President and for Further Relief the Court Deems Just and Proper. Upon consideration of this motion, and the opposition and reply thereto, the court will GRANT IN PART, DENY IN

PART, AND DEFER IN PART plaintiffs' motion, as discussed and ordered below.

## I. *Background*

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush Administrations.

This particular dispute revolves around requests for the production of documents served on the Executive Office of the President ("EOP") on October 27, 1998. The EOP served its responses and produced documents on January 14, 1999. These responses, however, included several objections to the requests as irrelevant, unduly burdensome, or beyond the scope of this court's orders. Plaintiffs initially filed their motion to compel documents regarding their second request for documents on March 26, 1999. Plaintiffs then withdrew that motion, and the parties engaged in negotiations regarding the plaintiffs' motion. The EOP provided plaintiffs with supplemental information and documentation on April 22, and April 29, 1999.

On June 14, 1999, plaintiffs filed a revised motion to compel documents. After this motion was filed, the parties engaged in further discussions and several more of the plaintiffs' arguments were rendered moot. Plaintiffs, however, still seek to compel documents relating to several of their requests. These remaining requests include requests for documents relating to Linda Tripp and Kathleen Willey, a list of those individuals whose FBI files were requested by the White House during Craig Livingstone's tenure there, certain e-mails and hard drives of relevant individuals, documents relating to Mrs. Clinton's and EOP computers and the information contained therein, certain documents regarding "Travelgate" and "Filegate", documents relating to a 1975 Memorandum to Counsel for the President on FOIA, and telephone logs and related billing records for nine individuals. In light of recent developments regarding the records management of White House e-mails, the plaintiffs' requests for e-mails

and hard drives will be addressed later in a separate opinion. The remaining requests, however, are addressed below.

## II. *Analysis*

1. *Documents regarding Kathleen Willey and Linda Tripp (Request Nos. 1–3, 79)*

A. Documents related to requests for and uses of Willey's and Tripp's FBI information, including such information received or given to James Carville or the EIP (Request Nos. 1–2, 79).

 In their first and second requests, plaintiffs seek all documents related to any requests for or use of information in FBI files or government records pertaining to Kathleen Willey and Linda Tripp. Plaintiffs further seek all documents referring or related to Willey and Tripp obtained from or provided to James Carville or the Education and Information Project, Inc. ("EIP"). "Parties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action." FED.R.CIV.P. 26(b). As the EOP points out, this court has already ruled on the relevance of issues concerning Willey and Tripp to this case.

With regards to Kathleen Willey, the court has allowed discovery into the letters sent from her to President Clinton, which were publicly released by the White House after Willey's appearance on "60 Minutes". *See Alexander v. FBI*, 186 F.R.D. 113, 115 (D.D.C.1998). This court found such discovery to be relevant to the pending case because if, as this court has since found, those letters were "maintained in a way that implicated the Privacy Act, then [their] misuse could prove to be circumstantial evidence of file misuse aimed at the plaintiffs in the case at bar." *Id.; see also Alexander v. FBI*, 193 F.R.D. 1 (D.D.C.2000) (finding that the Willey letters were maintained in a way that implicated the Privacy Act). Regarding Linda Tripp, this court has held that documents relating to the Department of Defense's release of information from Ms. Tripp's security clearance form, or other alleged misuse of Ms. Tripp's government files, are relevant to

the case at bar. *See Alexander v. FBI*, Civ. No. 96–2123, Order at 6–7 (D.D.C. April 12, 1998); *Alexander v. FBI*, 186 F.R.D. 113, 115 (D.D.C.1998).

The EOP states in its opposition that, consistent with the court's prior ruling, it searched and produced all documents relating to "the maintenance and release" and "requests from the White House Counsel's Office" of those "documents concerning Ms. Willey that have been publicly released." Opposition by Defendant EOP to Plaintiffs' Motion to Compel Documents Regarding Second Request to EOP at 5, 8. The EOP further states that it has searched for and provided documents relating to the Department of Defense's release of Tripp's security clearance form, and any other alleged misuse, as set out by this court. *See id.* at 7. In response to Request 79, the EOP states that it searched for and produced all documents obtained from or provided to James Carville or the Education and Information Project "relating to the maintenance and release of documents concerning Ms. Willey that have been publicly released, and documents relating to [the Department of Defense's] release of information from Ms. Tripp's security clearance form." *Id.* at 9. Therefore, the EOP has already provided all relevant material responsive to the plaintiffs' request.

Plaintiffs are not entitled to documents concerning proper requests and uses of Willey's and Tripp's FBI information, as this information clearly has no relevance to the pending action. Plaintiffs' request is also denied to the extent that it seeks information relating to any misuse of Willey's and Tripp's FBI information other than those particular instances already addressed. As this court has previously stated, it will not "allow plaintiffs to discover information on all of the White House's alleged adversaries without any proper factual grounds to support such discovery." *Alexander v. FBI*, 186 F.R.D. 113, 119 (D.D.C.1998) (denying discovery into matters concerning Monica Lewinsky). This

court has allowed discovery into matters concerning Willey and Tripp due to the fact that the plaintiffs presented the court with "discrete factual bas[es]" to support their theory of file misuse, and "the type of misuse paralleled the allegations of plaintiffs in the case at bar." *Id.*

The plaintiffs have presented no evidence of any misuse of Willey's and Tripp's FBI information other than the release of Willey's letters and Tripp's security clearance form. As the EOP has already produced all documents concerning these instances of misuse, the plaintiffs' requests for any other documents pertaining to Willey's and Tripp's FBI information are denied.

B. Documents showing the EOP's filing system for documents relating to Linda Tripp (Request No. 3).

 In their third request, plaintiffs seek all documents sufficient to show the filing system in the EOP for documents relating to Linda Tripp.[1] The EOP also objected to this request, arguing that the information the plaintiffs seek is irrelevant. The party seeking to compel information bears the burden of first demonstrating its relevance. *See Alexander v. FBI*, 192 F.R.D. 42, 44–45 (D.D.C.2000); *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C.1999); *Alexander v. FBI*, 186 F.R.D. 21, 45 (D.D.C.1998). The plaintiffs correctly state that information regarding the filing system from which records that were publicly released were obtained is relevant because the Privacy Act protects records depending on how they were stored. The EOP responds, however, that with regards to publicly released Tripp records, information regarding their filing system is irrelevant because "it was the Department of Defense that released the information concerning Ms. Tripp." EOP Opposition at 9.

Plaintiffs allege that they have evidence of a "direct link" between the White House and the release of this information. This evidence, however, consists only of the fact that,

---

1. The plaintiffs also requested this information as to Monica Lewinsky and Kathleen Willey. The plaintiffs withdrew their request as to Monica Lewinsky, however, and the EOP has provided all documents pertaining to the filing system for the Willey documents. Therefore, the only issue that remains concerns the documents relating to Tripp.

shortly before Tripp's information was published in an article in *The New Yorker*, Jane Mayer, the author of that article called a deputy of then-current White House Press Secretary Mike McCurry, at which time the deputy referred her to the Department of Defense. The court finds that such evidence is insufficient to establish the relevance of the EOP's filing system in this case. The evidence before this court indicates only that the Department of Defense released Tripp's security form from their files. Plaintiffs' additional evidence of a brief contact between Jane Mayer and a deputy at the White House fails to establish that the EOP also participated in the release of Tripp's form, or any other FBI information, in violation of the Privacy Act. Therefore, the plaintiffs' request is denied.

2. *Plaintiffs' request for a list of persons whose FBI reports were requested by the White House during Craig Livingstone's tenure (Request No. 5).*

 In their fifth request, plaintiffs seek to acquire a list of persons whose FBI reports were requested by the White House during Craig Livingstone's tenure. The EOP responded that it does not have any such list, and therefore, it has produced no documents. Rule 34 of the Federal Rules of Civil Procedure governs discovery requests for the production of documents and things. It allows a party to serve on another party a request to produce any designated documents that "are in the possession, custody or control of the party upon whom the request is served." FED.R.CIV.P. 34(a). Therefore, Rule 34 only requires a party to produce documents that are already in existence. *See*

*Rockwell Int'l Corp. v. H. Wolfe Iron and Metal Co.*, 576 F.Supp. 511, 511 (W.D.Pa. 1983); *see also* 8A CHARLES A. WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994) ("[A] party can not be required to permit inspection of documents or things that it does not have and does not control.") A party is not required "to prepare, or cause to be prepared," new documents solely for their production. *See Rockwell*, 576 F.Supp. at 511. Therefore, as there is no evidence that the EOP does in fact possess any list of individuals whose background summaries or FBI reports were requested by the White House from the FBI[2], the plaintiffs' request to compel such a list is denied.[3]

3. *All documents relating to any desktop or laptop computer and any floppy disks used by or assigned to Mrs. Clinton, which contain information relating to Travelgate, Filegate, the White House Office Database computer system, or the obtaining or use of FBI files or government records (Request 21–22).*

 Plaintiffs also seek to compel the information contained in all laptop and desktop computers and removable storage devices used or assigned to Mrs. Clinton relating to Travelgate, Filegate, the WhoDB computer system, or the obtaining or use of FBI files or government records. The EOP responded that, according to its records, no laptop or desktop computers have ever been assigned to Mrs. Clinton. *See* EOP Opposition at 11. The EOP further stated that it has inquired, but is unaware of Mrs. Clinton using White House computers for any purpose relating to

---

**2.** As evidence that the EOP does have the desired list, the plaintiffs cite the EOP's statement at a status conference that "there were approximately 10,000 background summary reports of Clinton White House employees [and political employees] in the Clinton White House." Plaintiffs' Reply at 14. The fact that the EOP had such information, however, has no bearing on the issue at hand—whether the EOP also compiled a list of which particular summary reports were requested by the White House over a specific period of time.

**3.** This court further notes that the plaintiffs would not be entitled to receive a list of any

persons whose files were requested at a time when they were employed by the Clinton Administration, as such information is irrelevant to the pending action. *See Alexander v. FBI*, 193 F.R.D. 1 (D.D.C.2000) (denying discovery into matters regarding the files of then-current Clinton Administration employees based on the fact that such information is irrelevant to the pending action); *Alexander v. FBI*, 186 F.R.D. 200, 204 (D.D.C.1999) (same); *Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order at 8 (D.D.C. Apr. 16, 1999) (same).

the plaintiffs' request. *See id.* Therefore, the EOP states, it has nothing to produce.

Plaintiffs argue that the EOP's response is "suspicious," given Thomas McLarty's testimony that he thinks (but is not certain) that he has seen Mrs. Clinton typing on a laptop. Plaintiffs' Motion to Compel at 22. As the EOP correctly notes, however, such suspicion is insufficient to support their motion to compel. Plaintiffs must demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld. *See Ayala v. Tapia,* 1991 WL 241873 at *2 (D.D.C. Nov.1, 1991) (denying motion to compel because that party seeking production could not identify any specific information that was being withheld). Thus, having failed to demonstrate that any documents have been withheld, the plaintiffs' request is denied.

4. *Documents pertaining to EOP Computers and Computer Service Records (Request Nos. 37–41, and 43–44).*

Plaintiffs initially requested several documents relating to the computers and hard drives of several different White House employees. The White House objected to the plaintiffs' request as irrelevant and overbroad, arguing that many of these employees were unconnected to this litigation. In their motion to compel, the plaintiffs eliminated their request as to all those employees objected to, with the exception of Marsha Scott. Plaintiffs argue that Scott, a long-time aide to the President, is relevant to the pending case. In support of their claim, plaintiffs point to Tripp's testimony at her deposition that she saw Bill Kennedy talking with Scott about entering data from what appeared to be FBI files into a White House database that could be shared with the Democratic National Committee. *See* Tripp Deposition at 141–148; 163–167. Based on this evidence, the court finds that information regarding

Marsha Scott's computer is relevant to the pending action as it may bear on the possible misuse of the plaintiffs' files. The court will now address the relevance of the particular documents requested by the plaintiffs.

A. Marsha Scott's computer service records (Request Nos. 37, 40–41, and 43).

■ Plaintiffs first request several computer service records pertaining to Marsha Scott, including all documents related to the archiving, wiping and/or restoration of Scott's computers and hard disk drives, and all of her OA62, OA65 and CSAR forms. The EOP objected to these requests as irrelevant.[4]

Form OA65, as described by former White House Branch Chief of Customer Service Computer Support Laura Crabtree[5] at her deposition, is a handwritten form by which users request service for their computer. Plaintiffs argue that they are entitled to any OA65 forms and all other documents requests for the archiving, wiping or restoration of Scott's computers and hard drives to establish whether her hard drive had been erased or archived and to determine the current location of any computers or hard drives used by her in the past.

Plaintiffs also request all documents "relating" to the requests for archiving and CSAR forms. The plaintiffs explain in their motion that this request seeks documents to or from Scott regarding whether or not she should archive or erase her hard drive. They argue that such information is relevant, given the evidence that information from the plaintiffs' files could have been entered on Scott's hard drive and misused.

The plaintiffs also explain the relevance of their request for Scott's OA62 forms. Crabtree testified that the OA62 form is the standard employee agreement regarding computer security, signed by EOP employees, which describes the policy regarding unauthorized

---

4. Notwithstanding their objections that the information sought was irrelevant, the EOP did produce requests for the archiving of hard disk drives and CSAR forms OA62 and OA65 for several individuals.

5. The court notes that the prior testimony of Ms. Crabtree, as well as affidavits filed by Daniel Barry, have been called into question by recent revelations regarding the White House's prior

searches of e-mails, and are the subject of a pending motion filed by the plaintiffs for an evidentiary hearing. However, as the court is granting the plaintiffs' requests for these forms described by Ms. Crabtree in her deposition, the plaintiffs suffer no detriment by the court's reliance on this particular testimony for this limited purpose.

disclosure or use of information and establishes a user ID for access to the computer network. Plaintiffs argue that they are entitled to any OA62 forms pertaining to Scott so that they can show that she was obligated to handle information properly, not only by applicable law and regulations, but also by signed agreement. Plaintiffs further argue that the document would show any user ID assigned to Scott, which would be helpful to determine if she accessed data as described by Tripp.

In light of the court's finding above with respect to Scott's relevance to this case, the court finds that the plaintiffs have met their burden of establishing the relevance of the information sought. The court finds that the plaintiffs' request is "reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Accordingly, the court will order the EOP to produce Marsha Scott's computer service records, as well as all other documents pertaining to the archiving, erasing, and servicing of her computer and hard drives.

B. Documents from the "archival database" relating to Marsha Scott (Request 38).

■ Plaintiffs next request all documents from the "archival database" relating to Marsha Scott. The EOP has produced all such documents pertaining to several other individuals. The EOP argues, however, that this information is irrelevant because it only shows that data from a particular individual was archived; it does not show what information was archived. The court disagrees with the EOP's argument. Given the possibly relevant material on Scott's computer, the plaintiffs are entitled to know if any of that material has been archived, as such information may lead to the discovery of admissible evidence. Therefore, the EOP must produce all documents from the "archival database" pertaining to Marsha Scott.

C. Documents relating to the reassignment or return to excess inventory pool of computers or hard disk drives for several individuals (Request No. 39).

■ The plaintiffs next request all documents relating to the reassignment or return

to excess inventory pool of computers or hard disk drives for several individuals, and for Marsha Scott in particular. In its opposition, the EOP stated that the only documents that the EOP maintains are the CSAR forms it already produced and forms known as reports of excess personal property. The EOP objected to undertaking a search for excess property reports as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In support of its argument, the EOP attaches a copy of an excess property report, and notes that, although the report reflects that equipment came generally from offices such as the Office of Administration, or the White House, it does not identify the equipment by individual or even by more specific offices such as OPS or the White House Counsel's Office. Therefore, the EOP argues, the reports have no probative value.

The plaintiffs respond by pointing out that the reports at issue do include the serial numbers of the computers. They argue that the reports are relevant because they could be combined with other documents showing the serial numbers of computers assigned to individuals. Once combined, these reports would establish whether certain individuals ever had their computers returned to the excess property inventory pool, and, thus, had their hard drives eliminated in the process. Plaintiffs, however, fail to request any documents indicating the serial numbers of the computers assigned to the individuals at issue; nor do they establish that they already have this information. Furthermore, it is not self-evident, and the plaintiffs do not explain, how information that an individual's old computer has been put in excess inventory, and therefore the hard drive eliminated, is likely to lead to the discovery of admissible evidence. Therefore, the plaintiffs' request is denied.

D. Documents in the inventory tracking database (Request No. 44).

■ Finally, plaintiffs request all documents in the inventory tracking database with regards to Marsha Scott in order to

show the computer currently assigned to Scott.[6] The EOP objects to this request as irrelevant. The plaintiffs, however, argue that they have established the relevance of information regarding Marsha Scott's computer to this case, and that, at least presumably, the computer most recently assigned to Scott may have been the one used by her when Tripp first testified publicly about Scott. The court finds that the plaintiffs' request is reasonably calculated to lead to the discovery of admissible evidence. Therefore, the EOP must produce all documents in the inventory tracking database regarding Marsha Scott.

5. *Documents relating to Filegate and Travelgate (Requests 59 and 78).*

A. All documents given to ORM by Harold Ickes that relate to Filegate or Travelgate (Request 59).

Plaintiffs request all documents pertaining to Filegate and Travelgate contained within approximately 60 boxes of documents sent to the ORM by Harold Ickes, the Deputy Chief of Staff during the 1993–94 primary Filegate period. The EOP objects to the plaintiffs' blanket request for all "Travelgate" documents as overbroad, unduly burdensome, and irrelevant. The court agrees with the EOP's argument. This court has previously ruled that matters regarding Travelgate, with the exception of the possible misuse of the government file of Billy Dale, a former Travel Office employee, are not relevant to the instant case. *See Alexander v. FBI,* 186 F.R.D. 113, 116 (D.D.C.1998); *Alexander v. FBI,* 192 F.R.D. 42, 45 (D.D.C.2000) (Re: Thomas McLarty). Therefore, plaintiffs are entitled only to any documents that may relate to the misuse of Billy Dale's file. They are not entitled to any other documents pertaining to Travelgate.

 As to the plaintiffs' request for documents regarding Filegate, the EOP states that it has already searched Mr. Ickes' boxes and produced all relevant documents in its response to the plaintiffs' first request for

the production of documents. Plaintiffs, however, take issue with this search because, as the EOP admits, the Ickes boxes were not searched individually, but rather, only the indices of the boxes were searched. In response, the EOP cites a prior opinion of the court in this case, in which the EOP claims the court upheld the scope of their search as proper. *See Alexander v. FBI,* 188 F.R.D. 111, 115 (D.D.C.1998). The court's ruling, however, was only that the plaintiffs were not entitled to pursue discovery into the scope of that search as they had not set forth any information suggesting that the search was deficient in any way. *See id.* This court did not rule on the sufficiency of the search itself, but rather only on the sufficiency of the plaintiffs' evidence regarding the search. *See id.* In the instant dispute, the plaintiffs have presented the court with specific evidence regarding the EOP's search.

The EOP argues that the plaintiffs' demand that every document contained in each of the Ickes boxes be searched is unreasonable. In order to support its objection, however, the EOP must make a specific, detailed showing of the burden such a search would require. *See Alexander v. FBI,* 193 F.R.D. 1 (D.D.C.2000); *see also Chubb Integrated Systems Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 60–61 (D.D.C.1984) ("An objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.")

The EOP makes no such showing in this instance. Instead, to support its claim that its search was reasonable, the EOP relies on a FOIA case, *Manna v. United States Dep't of Justice,* 832 F.Supp. 866, 875 (D.N.J.1993), in which the court stated that district courts have sanctioned the use of general indices as a reasonable search technique. This court has already stated, however, that "it does not agree with the analogy drawn by the EOP to discovery in FOIA cases, [because] discovery in a FOIA action is extremely limited, espe-

---

**6.** The EOP states in its opposition that this database reflects only the most recent assignment of

computers and related equipment.

cially when compared to discovery conducted in a traditional civil action." *Alexander,* 188 F.R.D. at 116, n. 2 (citation omitted). Accordingly, the EOP's argument is rejected, and the court will require the EOP to conduct a search of all individual documents contained in the Ickes boxes and to produce any relevant documents, as defined in this order, that were not previously produced.

B. Documents Relating to George Stephanopoulos Regarding Travelgate, Filegate, or the Obtaining or Use of FBI files (Request 78).

As discussed above, plaintiffs' request for documents regarding Travelgate, with the exception of any documents relating to the misuse of Billy Dale's FBI file, are irrelevant, and, therefore, denied. As to those documents concerning Filegate, the EOP has stated that it has searched for and produced all such documents. As the plaintiffs have not presented the court with any evidence that the search, as related to these documents, was insufficient or that there exists any responsive documents other than those already produced, the plaintiffs' request to compel further documents regarding Filegate is also denied. Thus, if the EOP has any documents relating to Stephanopoulos regarding the misuse of Billy Dale's file, it must produce them. Plaintiffs' request is denied, however, as to all other documents.

7. *All documents related to a February 1975 Memorandum to Counsel for the President regarding FOIA (Request 77).*

 Plaintiffs request all documents relating to a February 28, 1975 Memorandum to Philip Buchen, Counsel to the President, on the applicability of FOIA to the EOP ("Buchen memo"). This memorandum was cited in a 1975 opinion letter from then-Assistant Attorney General Antonin Scalia regarding the Privacy Act, which the EOP submitted as Exhibit 2 to their Motion for Judgment on the Pleadings in this case. The EOP has produced the requested memorandum to the plaintiffs. They object, however, to the plaintiffs' request for all related documents, which the plaintiffs explain includes all memoranda generated "in response to the primary document," as vague and overbroad. Plaintiffs' Motion at 50.

The court notes that the Buchen memo is clearly relevant, given that it is cited in an opinion letter filed and relied on by the EOP in support of one of their main arguments in this case—that the Privacy Act does not apply to the EOP. In fact, the EOP does not contest the relevance of the Buchen memo itself. Rather, it argues that the plaintiffs have not established the relevance of those documents "related to" it.

Given the obvious relevance of the Buchen memo, however, it is clear to this court that documents interpreting and discussing it are also relevant to the pending action. It is reasonable to assume that lawyers discussing the applicability of the Privacy Act to the EOP would analogize to and discuss FOIA's applicability, which the Buchen memo clearly addresses. In fact, this is what then-Assistant Attorney General Antonin Scalia did in the opinion letter submitted by the EOP as an exhibit to their Motion for Judgement on the Pleadings. Given that the Privacy Act and its applicability to the EOP is a major issue in this case, the court finds that the plaintiffs' request for documents discussing the Buchen memo is "reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1).

Indeed, the EOP's primary objection to the plaintiffs' request for "related" documents seems to be to the plaintiffs' definition of what constitutes "related" documents. The plaintiffs include in their definition all documents that "refer" to the memorandum in any way and those that "were created in response to it." The court agrees that such a definition is vague and overbroad, as it would include documents that do not in any way discuss the memorandum or its subject matter. Therefore, the EOP need only produce all documents which in some way discuss, interpret or analyze the Buchen memo regarding FIOA's applicability.

8. *Telephone logs and related billing records for nine individuals (Request No.89).*

Finally, the plaintiffs request the telephone logs and billing records for telephones used

by or assigned to nine individuals—Craig Livingstone, Anthony Marceca, Hillary Rodham Clinton, Bernard Nussbaum, William Kennedy, Deborah Gorham, Betsy Pond, Maggie Williams, and Marsha Scott.

## A. Telephone Logs

■ The EOP objects to the plaintiffs' request for certain individuals' telephone logs as irrelevant, unduly burdensome, and overbroad, on the grounds that it is not limited by any subject matter. Plaintiffs respond, however, that they are seeking telephone records to determine who these key individuals contacted and worked with so they can discover all the facts. Because the phone records will give this information, but will not necessarily show any other information such as the subject of the phone call, their request cannot be limited to a particular subject matter. The court agrees with the plaintiffs' argument and finds that such information, by providing a list of persons certain key individuals contacted, is relevant to the pending action.

The EOP's primary objection to this request, in fact, appears to be that it is overly burdensome. As discussed above, however, in order to support its objection, the EOP must make a specific, detailed showing of the burden such a search would require. To this end, the EOP provided the declaration of Michelle Peterson, Associate Counsel to the President in the Office of the White House Counsel. In this declaration, Ms. Peterson states that, in order to respond to the plaintiffs' request, the EOP would have to search through 52 boxes of telephone logs—37 boxes from the White House Counsel's office and 15 boxes from the First Lady's Office.[7] *See* Declaration of Michelle Peterson at 2 (July 2, 1999). Ms. Peterson further stated that all of these boxes "would have to be retrieved and at least cursorily reviewed to ascertain whether they might contain any messages for

the time period in which [the individuals] worked in the White House . . . ." *Id.* Then, if the box did contain messages from that time period, the EOP would then have to conduct a page-by-page review of the messages in that box to determine if any of the messages were for the requested individuals. *Id.*

Ms. Peterson and the EOP, however, fail to establish, by way of estimated required staff hours, estimated cost, or some other specific showing, just how this search would be overly burdensome. It may be that the EOP's cursory search of these boxes demonstrates that there are in fact only a few boxes from the relevant time period that would, therefore, need a more detailed search. Thus, the court finds that the EOP has not sufficiently established that the plaintiffs' request is overly burdensome, and the EOP must produce the requested telephone logs.

## B. Billing Records

■ The EOP also argues that plaintiffs' request for the nine individuals' billing records is irrelevant and overbroad as the billing records do not contain "call detail"—i.e., the numbers to and from which the call was placed. The EOP again relies on the Peterson Declaration to support its argument.

Ms. Peterson states in her declaration that the only billing records that provide the originating and the destination phone numbers are those pertaining to cellular phones. All other White House billing records, she attests, do not give the originating phone number.[8] Peterson Declaration at 3. Based on this information, the court finds that, as there would be no way of ascertaining from these billing records which calls were made by the requested individuals and, thus, which contacts were made by them, the plaintiffs' request for such records is not "reasonably calculated to lead to the discovery of admissi-

---

7. This includes 2 boxes marked "First Lady's Office—Maggie Williams."

8. Peterson explains that, with the exception of the cellular telephone billing records discussed above, there is no call detail for local telephone calls. *See* Peterson Declaration at 3. For domestic long distance calls, the vast majority are placed via an FTS number, for which there is

also no call detail, and those few that are not, while reflecting the full destination number, reflect as the originating number just one of several trunk lines of origin. *See id.;* Second Declaration of Michelle Peterson at 1–2 (April 11, 2000) International calls, while also reflecting the destination number, similarly do not reflect the originating number. *See* Peterson Declaration at 3.

ble evidence." FED.R.CIV.P. 26(b)(1). Accordingly, the plaintiffs' request for billing records, other than those pertaining to cellular phones, is denied.

Regarding the cellular phone records, which contain specific call detail, Ms. Peterson stated that, of the requested individuals, only Mr. Kennedy and Ms. Williams were assigned EOP cellular phones. The EOP still objects to producing these billing records, however, arguing that the plaintiffs are not entitled to a record of these individuals' calls on all topics and from any callers.

As noted above, however, these records are merely lists of the contacts made by these individuals, which the court finds to be relevant to the pending action; they do not provide any information regarding the subject matter of the call. Therefore, the plaintiffs are unable to limit their request by subject matter. As these particular records do provide telephone numbers identifying the persons contacted by the requested individuals, the court finds that the plaintiffs' request as to these records is "reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Thus, the EOP shall produce the billing records pertaining to Kennedy's[9] and Williams' cellular phones. It need not produce, however, any other billing records.

### III. *Conclusion*

For the reasons stated above, the court HEREBY ORDERS that Plaintiffs' Motion [944] to Compel Production of Documents Regarding Second Request to the EOP and for Further Relief the Court Deems Just and Proper is GRANTED IN PART, DENIED IN PART and DEFERRED IN PART. The EOP shall, within 20 days of this date, provide documents to the plaintiffs as discussed in this opinion. The court will defer on plaintiffs' requests numbers 19–20 and 28, regarding hard drives and e-mails, and will

issue a separate opinion regarding those requests at a later date.

SO ORDERED.

---

9. The court notes that the EOP did not assert any privilege in response to the plaintiffs' request. Rather, they objected only on the grounds that the request was "irrelevant, unduly burdensome,

and overbroad." EOP Responses at 52. Thus, any possible privilege claim based on William Kennedy's position as former Associate White House Counsel is waived.