**12**

In re LORAZEPAM & CLORAZEPATE
ANTITRUST LITIGATION.

Health Care Service Corporation,
Plaintiff,

v.

Mylan Laboratories, Inc.,
et al., Defendants,

and

Blue Cross Blue Shield of Minnesota,
et al., Plaintiffs,

v.

Mylan Laboratories, Inc.,
et al., Defendants.

MDL No. 1290.
Misc. No. 99–276 TFH/JMF.
Nos. 01–2646, 02–1299 TFH/JMF.

United States District Court,
District of Columbia.

Dec. 23, 2003.

Richard Alan Feinstein, Boies, Schiller &
Flexner, LLP, Rajeev K. Malik, White &
Case, Michael David Hausfeld, Mary Nicole
Strimel, Cohen, Milstein, Hausfeld & Toll,
P.L.L.C., Donald Stuart Cameron, Office of
Corporation Counsel, D.C., Melvin Howard
Orlans, Federal Trade Commission, Reuben
Guttman, Robert T. Rhoad, Thomas O. Gor-
man, David T. Fischer, Porter, Wright, Mor-
ris & Arthur, Thomas Joseph Poulin, W.
Scott Simmer, Eric Sean Jackson, Robins,
Kaplan, Miller & Ciresi, L.L.P., Washington,
DC, Ann Beimdiek Kinsella, Minnesota At-
torney General's Office, St. Paul, MN, Kim-
berly L. King, Peter H. Williams, Office of
Attorney General, Tallahassee, FL, Don R.

**13**

Sampen, Office of Attorney General, Robert W. Pratt, Thomas Campbell, John T. Cusack, Gardner, Carton & Douglas, Chicago, IL, John Andrew Ioannou, Robert L. Hubbard, Susan E. Raitt, Attorney General of State of New York, Barbara J. Hart, Bernard Persky, Hollis L. Salzman, Ngozi Okaro, Goodkind Labaton Rudoff & Sucharow, Linda P. Nussbaum, Cohen, Milstein, Hausfeld & Toll, PLLC, Stanley Grossman, Pomerantz, Haudek, Block & Grossman, New York City, Doreen Claire Johnson, Attorney General's Office, Mitchell Lee Gentile, Ohio Attorney General, Columbus, OH, Terry A. Lupia, Joseph S. Betsko, Office of Attorney General, Harrisburg, PA, Douglas L. Davis, Office of Attorney General, Charleston, WV, Ellen Schiff Cooper, Office of Attorney General, Baltimore, MD, Daveed Schwartz, Attorney General, Anchorage, AK, Mark Pryor, Office of Attorney General, Little Rock, AR, Natalie S. Manzo, Office of Attorney General, Los Angeles, CA, Jennifer F. Connolly, Maria E. Berkenkotter, Office of Attorney General, Denver, CO, Arnold B. Feigin, MacKenzie Hall, Office of Attorney General, Hartford, CT, Brett T. DeLange, Office of Idaho Attorney General, Boise, ID, John F. Dwyer, Iowa Department of Justice, Des Moines, IA, Jane Bishop Johnson, Louisiana Department of Justice, Baton Rouge, LA, Stephen L. Wessler, Augusta, ME, Jennifer Granholm, Assistant Attorney General's Office, Lansing, MI, Michael J. Delaney, Office of Attorney General, St. Louis, MO, Patricia A. Madrid, Office of Attorney General, Albuquerque, NM, Steven J. Leippert, Oklahoma City, OK, Andrew E. Aubertine, Department of Justice, Salem, OR, C. Havird Jones, Jr., Office of Attorney General, Columbia, SC, Jeffrey P. Hallem, South Dakota Attorney General's Office, Pierre, SD, Dennis J. Garvey, J. Patrick Riceci, Office of Attorney General, Nashville, TN, Kelly Garcia, Office of Attorney General, Austin, TX, Wayne Klein, Office of Attorney General, Salt Lake City, UT, Julie Brill, Office of Attorney General, Montpelier, VT, Rebecca Garrou Ellis, Womble Carlyle Sanoridge & Rice, McLean, VA, Marta Lowy, Attorney General of Washington, Robert S. Schachter, Zwerling, Schachter & Zwerling, Seattle, WA, Herbert T. Schwartz, Williams, Bailey Law Firm, L.L.P., Houston, TX, for Plaintiff.

Barron Grier, Columbia, SC, Craig G. Harley, Atlanta, GA, David Hensler, Mitchell E. Zamoff, Hogan & Hartson, L.L.P., Diane Kelleher, U.S. Department of Justice, Joseph Jay Simons, Paul, Weiss Rifkind Wharton & Garrison, LLP, Kerri L. Ruttenberg, Kevin Richard Sullivan, Peter M. Todaro, King & Spalding, Steven A. Newborn, Clifford Chance US, LLP, Charles D. Atkins, Timothy K. Beeken, Debevoise & Plimpton, David A. Hickerson, Peter Dean Isakoff, Lisa R. Fine, Weil, Gotshal & Manges, L.L.P., Carl Stephen Rauh, Robert Stephen Bennett, Skadden, Arps, Slate, Meagher & Flom, LLP, Joseph Anthony Hynds, Rothwell, Figg, Ernst & Manbeck, Washington, DC, David Park, James Miller, John K. Carroll, Martin Seidel, Clifford Chance Rogers & Wells, LLP, Kevin J. Arquit, Simpson, Thacher & Bartlett, Michael Orth Ware, Mayer, Brown, Rowe & Maw LLP, Robert N. Kravitz, Lewis Farberman, Michael P. Bowen, Sidney Samuel Rosdeitcher, Paul, Weiss, Rifkind, Wharton & Garrison, Jonathan R. Tuttle, Debevoise & Plimpton, New York City, John F. Kinney, Freeman, Freeman & Salzman, P.C., Chicago, IL, Meredyth Smith Andrus, Office of Attorney General, Baltimore, MD, Seth E. Brown, Morrison & Foerster, LLP, McLean, VA, Stephen L. Klimjack, Jackson, Taylor, Martino & Hedge, Mobile, AL, Brian S. Roman, George H. Crompton, Ryan James, DKW Law Group, PC, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

Plaintiffs in this antitrust case are Blue Cross Blue Shield of Minnesota and of Massachusetts, the Federated Mutual Insurance Company, and the Health Care Service Corporation (hereafter collectively called "the Blues"). They opted out of a settlement premised on antitrust violations by the defendant, Mylan Laboratories (hereafter "Mylan") and their complaint has now survived Mylan's motion to dismiss. According to the Chief Judge, plaintiffs' allegations of injury based on Mylan's increased prices for lora-

zepam and clorazepate were sufficient to permit them to proceed to discovery.

I have met with counsel in an effort to find a means to resolve their discovery disputes but I obviously failed since Mylan has now moved to compel the Blues's responses to certain interrogatories and requests to produce documents.

After Mylan moved to compel, the Blues supplemented their earlier responses. The question now presented is whether the responses as supplemented are adequate. The matters in dispute fall into four categories: (1) contracts and correspondence between the Blues and their insurers bearing on the Blues's right to bring this lawsuit; (2) theories of damages and documents bearing on the purchase of lorazepam and clorazepate; (3) information pertaining to the Blues's managed care strategies and (4) corporate organization information and persons identified as having knowledge.

### Contracts with Insurers

Mylan initially sought the contracts, insurance policies, or plans that the Blues have with each of their customers and documents that show that the Blues are either payors of prescription drugs for their customers or have authority to bring this lawsuit on their customers' behalf. Three of the Blues, Blue Cross Blue Shield for Massachusetts, Blue Cross Blue Shield for Minnesota, and Federated Mutual Insurance Company, produced exemplar contracts or insurance plans that they asserted were representative of their relationship with their customers. Another Blue, Health Care Service Corporation ("HCSC"), has agreed to provide documents that describe the benefits it offers under its prescription drug program, exemplars of contracts between it and its self-funded customers, and a list that will identify all of the self-funded customers and employer-sponsored health plans that contracted with HCSC to administer claims on their behalf and pursue plan-related losses.

In response, Mylan has agreed to abandon its demand for all contracts and insurance plans if it can receive a representative set of contracts for each year. Mylan also seeks a certification that all contracts that the Blues had with their customers contained the same language regarding their managed care programs and their authority to sue on their customers' behalf. *Defendants Mylan Laboratories, Inc and Mylan Pharmaceuticals, Inc.'s Reply in Support of Their Motion to Compel Plaintiffs' Production of Documents and Responses to Interrogatories* ("Mylan Reply") at 4–5. Mylan wants to know, of course, whether there were variations among the Blues's customers as to these contract terms. *Id.* at 5.

In my view, the best solution is to relieve the Blues from producing a mountain of identical contracts while accommodating Mylan's legitimate demand to learn the contractual relationship between the Blues and their customers that justifies the Blues's bringing of this lawsuit. Accordingly, I will require the Blues to do the following.

For each year that the Blues claim damages from Mylan's acts, they will provide the contract and insurance plan that they claim is representative of their contractual relationship with their customers for that year. A corporate official who has sufficient knowledge to make the representation will certify that the contract tendered as representative was the contract that her company used with all of its customers in that year and that there were no variations, material to this lawsuit, among the customers' contracts in that year. If the official cannot make that representation, the Blue involved will provide any other contract used that year with any customer, identifying, if it is not obvious, the customer involved. It is thus my intention that each Blue will produce all the contracts it had with its self-insured customers, using exemplars, and produce any contract where there is a material variation between the exemplar and that contract.

My disposition leaves two holes in the doughnut.

First, had I required the production of all the contracts, Mylan would simultaneously learn the names of all of the Blues's customers because their names would be on the contracts. Since Mylan will now only receive representative contracts, it will not learn, at least from that source, the names of all the

Blues's customers. In a proposed order the Blues have submitted to me, they have indicated their willingness to provide Mylan with "a list of their self-funded customers from 1996 to the present." Blues's Proposed Order ¶ 2. I do not know if that will suffice or whether Mylan still wants a list of all customers in light of the production I am ordering. It is unfair for me to conclude that it is does without hearing from Mylan. I will, therefore, assume the list the Blues agree to provide will suffice unless Mylan files a motion for supplemental relief. I will, of course, permit the Blues to be heard as to any such motion before ruling.

The second hole is that the order the Blues propose would require production of contracts, policies, and plans only as to self-insured customers. The Blues resist Mylan's demand for these materials as to insured customers. I have reviewed the briefs submitted by the Blues and Mylan when Mylan moved to dismiss and have listened again to the oral argument held on Mylan's motion to compel. I am not, however, as certain as I wish to be as to the distinction drawn and why production of the contracts, policies and plans with the insured customers is or is not necessary. The point is most significant since the Blues would be abandoning any claim of damages flowing from their relationship with their insured customers if they resist permitting Mylan to investigate that relationship. Accordingly, I will limit the production to the self-insured customers until the parties brief whether I should expand it to the insured. The order I am issuing provides deadlines for those briefs.

### Theory of Liability

Mylan has demanded to have the Blues specify exactly why and how they were damaged by Mylan's increase in the prices of the two drugs involved. Mylan protests that the Blues have responded to their discovery demands by merely paraphrasing their complaint and that this is an insufficient response. By producing the contracts involved, the Blues should educate Mylan more completely as to the legal premise for their claim because I have to suppose that the contractual terms will define the relationship between the Blues and their customers and thereby indicate the Blues's entitlement to damages because of that relationship.

Furthermore, in my view, Mylan is entitled to as specific an explanation as possible of the legal basis for the Blues's claim and a particularized explanation of how the Blues were damaged by Mylan's actions. At my suggestion, HCSC supplemented its response to Interrogatory 6 in a way that specifies quite exactly and comprehensively the Blues's theory of liability. HCSC's response to Interrogatory 6 will be used as a model. The other Blues will, therefore, have to decide whether they are content to adopt HCSC's answer to Interrogatory 6 for I will deem them to have done so unless they file their own supplemental responses to Interrogatory 6. In other words, unless the other Blues file supplemental responses to Interrogatory 6, they will be deemed to have adopted, as their own, HCSC's response and will not be permitted to proceed on a theory of liability or damages other than the one articulated by HCSC in its response to Interrogatory 6.

### Payment Information

Mylan demands that the Blues provide it with all bills and invoices from their Pharmacy Benefit Managers ("PBMs") related to payments for lorazepam and clorazepate from 1996 to the present and all the data the Blues have regarding their transactions related to lorazepam and clorazepate, to include the identity of the manufacturer, the identity of the retail pharmacy involved in the transaction, what the Blues paid, whom they paid, the amount the PBMs paid for these transactions, any discounts, rebates, or charge backs that either the Blues or the PBMs received, and what drug and dosage each transaction detailed.

On October 22, 2003, the Blues, except for HCSC, produced tables listing the dollar value of their total purchases of lorazepam and clorazepate, regardless of manufacturer, by month for the period 1996–2003. They then represented that this was the only purchase data they had and that all other information regarding their purchases were in the possession of the PBMs.

HCSC, on the other hand, has produced "transaction detail information, including the identity of the manufacturer of each drug purchased, and [has] agreed to produce PBM billing information, correspondence with its PBMs, and any audits of its PBMs." *Defendants Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc.'s Motion to Compel Plaintiffs' Production of Documents and Responses to Interrogatories* ("Mylan Mot.") at 13.

Once it had filed its motion to compel, Mylan received additional tables from Blue Cross Blue Shield of Minnesota and Massachusetts and Federal Mutual Insurance Company that showed the total amount of their annual payments for Mylan's lorazepam and clorazepate for a particular period of time. Mylan protests that this "data does not include any transaction-level information or indicate whether the annual amounts listed were paid by Plaintiffs themselves or by their PBMs, whether Plaintiffs paid this money to their PBMs or directly to pharmacies, the amount of product involved in units, or the price of the product." Mylan Reply at 8.

Mylan insists that the tables must have been based on underlying source information that it has the right to examine and that the Blues have not objected to producing the invoices received from the PBMs during the relevant time period.

After oral argument, the Blues submitted a proposed order that required Blue Cross Blue Shield of Minnesota and Massachusetts and Federated Mutual Insurance Company to produce "[a]ll data in Plaintiffs' possession regarding Plaintiffs' payments for lorazepam and clorazepate, including the source data supporting the summary tables previously provided to Defendants." The proposed order did not oblige HCSC to produce any additional discovery.

It bears emphasis in this context that all the plaintiffs have insisted that they suffered directly from Mylan's alleged anti-competitive activities by being forced to pay more for lorazepam and clorazepate than they should have. *See, e.g., Opposition to Defendants' Mylan Laboratories, Inc., Mylan Pharmaceuticals Inc., Cambrex Corporation and*

*GYMA Laboratories of America's Inc.'s Motion to Dismiss Plaintiff Health Care Service Corporation's Second Amended Complaint* ("Blues's Opp.") at 14–15 (emphasizing by italics in original that "it is the insurer such as HCSC who actually pays" for drugs such as lorazepam and clorazepate); *Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants Mylan Laboratories Inc., Mylan Pharamaceuticals, Inc., Cambrex Corporation and GYMA Laboratories of America Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint* at 15 (emphasizing that the Blues were force to pay supra-competitive prices for drugs supplied by Mylan). These allegations of direct harm by the Blues of being forced to pay more for lorazepam and clorazepate than they would have in a market not affected by Mylan's alleged anti-trust violations were central to the Chief Judge's determination that they alleged sufficient injury to withstand Mylan's motion to dismiss. *Memorandum Opinion* at 13 (finding that the plaintiffs had standing to sue Mylan because they paid for the drugs).

■ Plaintiffs will have to premise their damages on what they paid for the drugs in question, and what they would have paid, but for Mylan's breaking the law. The data showing what they actually paid is not merely relevant; it is the very heart of the damages portion of the case. Mylan is unquestionably entitled to see the data that was used to create the Blues's summary tables and, as the Blues have agreed, to see "all data" in their possession "regarding Plaintiffs' payments for lorazepam and clorazepate" in the period in which the Blues claimed to have been damaged by Mylan's actions.

I note that in the proposed order the Blues have submitted, HCSC is not obliged to make any additional production because the order speaks only of the obligations of the other Blues to produce "all data" regarding their payments for lorazepam and clorazepate. I take it that this is because HCSC believes that Mylan is satisfied with HCSC's proposed production and wants nothing more. Because the deadline for discovery is fast approaching, and to prevent any need to

return to me for clarification, I will state that it is my intention that all the Blues, including HCSC, produce all data regarding their payments for lorazepam and clorazepate.

### Information Pertaining to the Blues's Managed Care Strategies

The Blues have complained that Mylan intended to eliminate the managed care strategies and programs [1] they had created to contain the cost of prescription drugs. *See Memorandum Opinion* of October 17, 2003 at 16–17.

Mylan sought documents pertaining to the MAC programs but the Blues, except HCSC, have indicated that they have responded with all the documents in their possession, custody, or control. Blues's Opp. at 9. They also point to their cooperation with Mylan in seeking the production of the documents from their PBMs by drafting with Mylan a joint Rule 45 subpoena to the PBMs.[2] In reply and in frustration, Mylan disputes the Blues's representation that they have produced all that they have. Instead, Mylan points to the fact that "HCSC has agreed to produce its correspondence with the PBMs related to MAC pricing and its other managed care programs," Mylan Mot. at 14, and portrays the other Blues as willfully refusing to produce documents they must certainly possess. Mylan points to three Blues's production of either drug formularies or correspondence *regarding them and to another Blue's* production of a memo regarding its PBMs's pharmacy intervention program. The production of these documents convinces Mylan that plaintiffs must possess other documents, responsive to its demand, but that they are "steadfastly refus[ing]" to produce them. *Id.* at 15.

■ The federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have. Such suspicion is, however, insufficient to warrant granting a motion to compel. *Alexander v. FBI*, 194 F.R.D. 305, 311 (D.D.C.2000). *See Bethea v. Comcast*, 218 F.R.D. 328 (D.D.C.2003) (applying principle to demand to search opponent's hard drive).

That one or two responsive documents exist or that the Blues did not specifically discuss the role of the PBMs in their MAC programs hardly justifies the conclusion that the Blues and their counsel have engaged in a massive deception and boldly lied to me in the pleadings they have filed. Moreover, compelling additional production at this juncture seems a futile gesture since I have to suppose that the Blues will say again what they have already said-that they have produced everything they have. I will, therefore, deny the motion to compel with the understanding that once the PBMs respond to the subpoena I will consider any supplemental submission by Mylan that establishes that the materials from the PBMs show that there is good cause to believe that there is additional, discoverable information concerning the MAC programs in the Blues's files.

### Corporate Organization Information and Persons Identified as Having Knowledge

Mylan seeks the names of all persons with knowledge relevant to the allegations in this lawsuit and who provided information that was included in the Blues's interrogatory responses. Mylan also wants: (1) personnel directors; (2) organizational charts showing the Blues's relationships with any subsidiaries and reporting relationships among the Blues's employees, and (3) corporate bylaws.

The Blues have complied with the obligation to indicate the persons who may have knowledge concerning the allegations in this lawsuit but balk at providing anything more.

At first glance, one is hard pressed to see why bylaws and personnel and organizational charts for divisions that had absolutely no responsibility for the purchasing of drugs and creating and implementing of the MAC programs could possibly lead to relevant information for this case. For example, the organization of the personnel department within the Blues or the nature of its affiliation with a subsidiary that only had responsibility for dealing with physicians under a

---

1. Called "MAC" programs.

2. Note that Mylan has no problem with the production of MAC documents by HCSC.

managed care program seems unlikely to yield relevant information. By the same token, Mylan does not have to accept the representations by the Blues as to who within their organizations has or had knowledge of the allegations pertaining to this lawsuit.

█ In my view, Mylan is entitled to learn the names of any other employees who were involved within the Blues in purchasing drugs, coordinating with the PBMs in reference to payment for drugs, and in creating and implementing MAC plans. Therefore, whether by organizational chart or otherwise, the Blues will have to identify by name and position these employees. Additionally, the Blues will have to identify any subsidiary whose employees had any such functions and responsibilities. If there is such a subsidiary with such employees, the Blues will have to provide the names of the employees within the subsidiaries who had such functions and responsibilities.

An Order accompanies this Memorandum Opinion.

## ORDER

In accordance with the Memorandum Opinion issued simultaneously herewith, **IT IS ORDERED THAT**:

1. For each year that plaintiffs claim damages from the defendants' acts or omissions, the plaintiffs shall, within thirty days of the date of this Order, produce the contract and insurance plan that they claim is representative of their contractual relationship for that year. This document will be referred to as "the exemplar." This production shall be accompanied by an affidavit from a representative of each plaintiff attesting that the exemplar is representative of the contracts plaintiff had with all of customers in that year and that there were no variations, material to this lawsuit, among the contracts with that plaintiff's customers in that year. If the representative cannot make that representation, then that plaintiff will provide any other contract it had with a customer in that year, identifying, if it is not obvious, the customer involved. The produc-

tion required by this paragraph is limited to self-insured customers and plaintiffs are not otherwise required to identify their customers.

2. Defendants will file any motion for relief in addition to the relief ordered in paragraph #1 by January 5, 2004. Plaintiffs may respond thereto within ten business days thereof and defendants may reply three business days later.

3. Plaintiffs, other than the Health Care Service Corporation ("HCSC") shall file a supplemental response to defendants' Interrogatory 6 by January 5, 2004. In the event these plaintiffs do not file a supplemental response, they will be deemed to have adopted the response of HCSC to defendants' Interrogatory 6 as their response to that interrogatory and will not be permitted to proceed to trial on a theory of liability or damages other than the one articulated by HCSC in its response to Interrogatory 6.

4. Plaintiffs shall, within thirty days of the date of this Order, produce all data in their possession regarding their payment for lorazepam and clorazepate, including the source data supporting the summary tables previously provided the defendants.

5. Plaintiffs shall, within thirty days of the date of this Order, provide defendants with a list of all of their employees who had any responsibility for purchasing drugs, coordinating with Pension Benefit Managers in reference to paying for drugs, and creating and implementing MAC plans. The plaintiffs will identify simultaneously any subsidiary whose employees had any such functions and responsibilities. If there is such a subsidiary with such employees, plaintiffs will provide simultaneously the names of the employees within the subsidiaries who had such functions and responsibilities.

**SO ORDERED.**